(62 South. 597.)

No. 19,491.

D'ECHAUX v. D'ECHAUX.

(June 9, 1913.)

*(Syllabus by Editorial Staff.)*

1. LIBEL AND SLANDER (§ 112*)—ACTION FOR DAMAGES—SUFFICIENCY OF EVIDENCE.

Since an action for damages for slander in stating that plaintiff was a "common woman," etc., partakes of the nature of a criminal accusation, the preponderance of the proof required to make out a case should be somewhat more than in ordinary civil actions.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 325–341; Dec. Dig. § 112.*]

2. LIBEL AND SLANDER (§ 112*)—ACTIONS—SUFFICIENCY OF EVIDENCE.

Evidence in an action for damages for slander in stating that plaintiff was a "common woman," etc., *held* not to sustain a finding that the alleged slanderous words were spoken.

[Ed. Note.—For other cases, see Libel and Slander, Cent. Dig. §§ 325–341; Dec. Dig. § 112.*]

3. LIMITATION OF ACTIONS (§ 55*)—ACTIONS—PRESCRIPTION.

An action of slander was barred by prescription where the evidence was that plaintiff learned of the alleged slander in the summer of 1910, and the complaint was not filed until October 16, 1911.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 299–306; Dec. Dig. § 55.*]

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Action by Mrs. Lea D'Echaux against Mrs. Jules D'Echaux. From a judgment for plaintiff, defendant appeals. Judgment set aside and suit dismissed.

Albert Voorhies and L. A. Hubert, both of New Orleans, for appellant. Woodville & Woodville, of New Orleans, for appellee.

PROVOSTY, J. The plaintiff sues her mother-in-law in damages for slander. The slander is alleged in the petition as follows:

"That on May 22, 1911, in the city of New Orleans, at the premises 1467 N. Miro street, Mrs. Jules D'Echaux, of lawful age and a resident of this city and state, in the presence of Alice McCarkle, Lulu Couret, and Mrs. Arnold D'Echaux, did maliciously and slanderously defame your petitioner, Mrs. Lea D'Echaux, stating 'that petitioner was a common woman, and when her husband would be out on business, instead of staying at home, would be out with other men to champagne suppers, and that the fine clothes worn by petitioner were given to her by other men, and that petitioner had been cast aside by her husband because she was a common woman, and that petitioner was going to leave Biloxi for some point in Texas,' mentioning no particular place, to put up with another man."

The only evidence offered by plaintiff in support of these allegations was that of Mrs. McCarkle, who testified that she having gone to the house of the defendant's daughter-in-law, Mrs. Arnold D'Echaux, to be fitted for a dress, the defendant came in after a few minutes, and she, the witness, asked the two ladies whether Mrs. Lea D'Echaux (the plaintiff) was related to them, and defendant—

"told me yes, that she was her daughter-in-law. And she got to saying different things about her, and saying Lea was not the thing she ought to be; that while her husband was at Audubon Park playing on the cornet, or some instrument, Lea was out at champagne suppers with gentlemen, she was not a fit woman to live with Henry. I says: 'She is not leaving Henry?' and she says: 'No, Henry has put her out.' Q. Did she say anything about her being a common woman? A. Yes, sir; she says: 'She is not a fit woman.' Q. Did she say 'common woman'? A. I don't remember the exact word, but she said she was not a fit woman; that Henry had put her out; that she was running around with other men at champagne suppers while he was at Audubon Park playing on some instrument. Q. Did she say anything about fine clothes? A. Yes, sir. She says, 'Lea has always got fine clothes, and who gives them to her?' I says, 'Lea told me her sister. You know, Julia·is a dressmaker, and makes them.' She says, 'No; she don't get them from there; she gets them from other men.'"

Mrs. D'Echaux, the defendant, denies on the witness stand that she ever spoke disparagingly of her daughter-in-law.

Mrs. Arnold D'Echaux testified that as she was escorting Mrs. McCarkle to the door after having fitted her dress, they met the defendant on the threshold, who was coming in on a visit; that she introduced the two ladies to each other; and that they exchang-

ed a few words of mere politeness, and Mrs. McCarkle left; that no mention whatever was made of the plaintiff.

The allegation of the petition that defendant said that plaintiff "was going to leave Biloxi for some point in Texas, mentioning no particular place, to put up with another man," is not supported by any evidence whatever.

Miss Lulu Couret testified that she was not present at any meeting between Mrs. McCarkle and defendant.

The allegation that defendant said of plaintiff that she was a "common woman" is not borne out even by the testimony of Mrs. McCarkle.

The slanderous words are alleged to have been spoken "at the premises No. 1467 N. Miro street." Mrs. McCarkle testifies that they were spoken at the house of Mrs. Arnold D'Echaux, and this is shown to have been on Columbus street.

This discrepancy is significant only as tending to show the levity with which this suit seems to have been filed.

No attempt whatever was made to show that the defendant entertained any ill feeling towards her daughter-in-law.

[1, 2] Cases of this kind partake more or less of the nature of a criminal accusation, and therefore the preponderance of proof required for, making out a plaintiff's case should be somewhat more decided in them than in ordinary civil actions; and it is lacking in the present case. Indeed, the preponderance is the other way.

[3] Moreover, so far as the record in this case shows, the right of action of the plaintiff would be prescribed even if she had one. The petition in this case was filed on October 16, 1911. The case was tried on January 16, 1912. Mrs. McCarkle testified that it was "summer before last" she had told plaintiff of her mother-in-law's having said these things of her. "Summer before last"

would be the summer of 1910—more than one year before the filing of the petition.

The judgment appealed from is set aside, and plaintiff's suit is dismissed at her cost.