(86 South. 747)

(No. 22896.)

## RAGGIO et ux. v. MORGAN'S LOUISIANA & TEXAS R. & S. S. CO.

(Nov. 29, 1920.)

*(Syllabus by Editorial Staff.)*

1. **False imprisonment** ⬤⟿31—**Libel and slander** ⬤⟿112(1)—**Evidence held not to show an arrest.**

   In an action for slander and false arrest by defendant's agents of plaintiff's minor son, wherein it appeared that some one had forged an indorsement to a voucher and cashed it, and that plaintiff's son was charged therewith, evidence *held* to sustain a finding that the son was not arrested, but repaid the money received willingly.

2. **Libel and slander** ⬤⟿44(1)—**Reasonable investigations into alleged forgery held not to constitute basis for slander suit.**

   Where a voucher mailed by defendant to an employee was cashed by another who forged the employee's indorsement thereto, defendant had a right to make all reasonable investigations of what seemed to have been a forgery, provided it resorted to no improper methods and acted in good faith, and investigations made by defendant, including questions asked to witnesses, *held* not sufficient to constitute a basis for slander.

Appeal from Eighteenth Judicial District Court, Parish of Lafayette; William Campbell, Judge.

Action by Antonio Raggio and wife against the Morgan's Louisiana & Texas Railroad & Steamship Company for slander and false arrest by defendant's agents of plaintiffs' minor son. Judgment for defendant, and plaintiffs appeal. Affirmed.

Crow Girard, John L. Kennedy, and George P. Lessley, all of Lafayette, for appellants.

Mouton & De Baillon, of Lafayette, for appellee.

DAWKINS, J. It appears that a certain voucher for the sum of $6.50 was issued by defendant in favor of and mailed to one George Raggio, an employee, who never received it. Subsequently this voucher was cashed at a local saloon in the town of Lafayette by some one who had evidently forged the indorsement of George Raggio thereon. When defendant discovered that Raggio had not received the voucher, an investigation was ordered, and in the course thereof it was discovered that the writing of the name of George Raggio on the back of the voucher was very similar to that of plaintiff's said son, Dewey Raggio. The special agent of defendant company went to the office of the foreman of its car repairing department at Lafayette, under whom young Raggio had formerly worked, and requested that the young man be sent for in order that he might be questioned as to the cashing of the voucher. When Dewey Raggio appeared at the office mentioned, he was shown the voucher in question by the special agent in the presence of two other employees of defendant and asked if he knew who had written the name of George Raggio thereon. At this point there is a wide divergence in the testimony of young Raggio and the others present. He says that he had been employed by the foreman of the car-repairing department a short while before, but had resigned, and later decided to go back to work again, that there was no vacancy just then, and he had been promised employment on the first opening, that, when he received the message to report at the office in question, he thought it was for the purpose of putting him back to work, and, with respect to what took place in the office at the time, testifies as follows:

"Q. When you got to Mr. Olson's office, who was in the office?

"A. Mr. Olson, Mr. Armfield, and Mr. Cain. Then Mr. Armfield pulled out this paper on me and voucher and a railroad time card and he told me that I had signed the voucher of George Raggio, and then I told him I was not the one that signed it. Mr. Armfield pointed to the signature on my time card in a rough way and

to the voucher which he said I was the one that signed it.

"Q. Signed whose name?

"A. George Raggio's name, telling me that Young Roy had identified me as being the one that had signed and cashed it.

"Q. Who did he mean?

"A. Bienvenu Roy, and then Mr. Armfield told me I either had to pay the $6.50 which the voucher was, or go to jail, and which I thought he was a detective of the railroad company, and thought I was a prisoner of him.

"Q. What did you do after that?

"A. I told. him I was going to pay the $6.50 before going to jail. I had the money.

"Q. Did you give him the money ($6.50)?

"A. Yes, sir; I gave him the $6.50, and he went off.

"Q. How long were you in Mr. Olson's office?

"A. About 20 minutes.

"Q. What was Mr. Armfield's manner when he was talking to you, all the time when he was talking to you?

"A. He was talking in a rough way."

On the other hand, the special agent, Armfield, Olson, the foreman, and Cain, another employee who were present, say that when the voucher and time cards were shown to Dewey Raggio and he denied any knowledge of the matter, he was informed by Armfield that the barkeeper who had cashed the check had stated that, while he did not know the name of the one who had received the money, he could identify him, and requested Raggio to go with him (Armfield) to the saloon, but that Raggio refused, and said that rather than have any further trouble about the matter he would pay the $6.50, which he did then and there. They all deny that any rough language was used or threats made, or that there was anything to have prevented Raggio from leaving the office at any time that he might have seen fit. However, Raggio contends that he offered to go with Armfield to the barkeeper to see if he could be identified, but the offer was refused.

[1] In these circumstances, the case resolves itself largely into a question of fact, with the witnesses standing three to one in favor of defendant's contention. The case was tried before the judge without a jury, and he was in a much better position to judge of their veracity than we are, and he has decided the facts in favor of defendant.

[2] Defendant had a right to make all reasonable investigations of what seems to have been a forgery by some one of the name of one of its employees upon a voucher on which it had paid out its money, provided it resorted to no improper methods and acted in good faith. Haney v. Trost, 34 La. Ann. 1146, 44 Am. Rep. 461; Grimes v. Coyle, 6 B. Mon. (Ky.) 301; Chapman v. Battle, 124 Ga. 574, 52 S. E. 812.

After a careful review of the evidence and the law applicable to the case, we find no reason to disturb the judgment of the lower court, and it is therefore affirmed at appellant's cost.