382 So.2d 279 (1980)
Faye Ross, wife of and E. L. CLEMENTS, Jr.
v.
Ashton J. RYAN and United China & Glass Company.
No. 10883.
Court of Appeal of Louisiana, Fourth Circuit.
March 11, 1980.
*280 James E. Glancey, Jr., Stanley E. Loeb, New Orleans, for plaintiffs-appellants.
Phelps, Dunbar, Marks, Claverie & Sims, Jesse R. Adams, Jr., Mark B. Meyers, New Orleans, for defendants-appellees.
Before GULOTTA, BOUTALL and CHEHARDY, JJ.
CHEHARDY, Judge.
This is an action for defamation which was brought by the plaintiff-appellant Mrs. Faye Ross Clements and her husband, E. L. Clements, Jr., against United China & Glass Company and its former president, Ashton J. Ryan, in Civil District Court for the Parish of Orleans.
The trial court granted defendants' motion for directed verdict at the close of plaintiff's case on the finding of insufficient evidence of publication of the accusations of theft.
Mrs. Clements had been employed by United China & Glass Company for approximately 23 years, the last 14 of these years as cashier, handling cash sales and petty cash. However, at least six other employees also had access to the cash.
In the latter part of 1974, Mrs. Clements was told by defendant Ashton J. Ryan of discrepancies in the funds, and was asked to submit to a lie detector test. The test was then given to Mrs. Clements and several other employees over a period of several weeks by Ronald Lauland, president of Lauland Security Consultants. Approximately two weeks after the first test Mrs. Clements submitted to a second lie detector test. Lauland testified that Ryan told him, even before he started the tests, that Mrs. Clements was stealing money. Ryan agreed, however, to also have other employees tested.
Mrs. Clements passed the first test, but three other employees failed, with one employee failing the test seven times. Ryan asked that Mrs. Clements be tested again. Once more she passed the test. Lauland further testified that Ryan, sometime later, called him on the phone and advised that he had better get his machine fixed because "we got the woman * * * she didn't confess, but I know we got her." Subsequent checks of the test results by other experts corroborated Lauland's findings.
On December 18, 1974, while independent auditors were at the company, Mrs. Clements' check of cash sale tapes against the books were "not coming out." this so upset her she had to take a nitroglycerin pill. When she got up, Ryan asked the controller, who was standing by, to take her keys.
Ryan then called her into his office, alone, told her to get her purse, get out of there and never come back because she was being fired for stealing. Plaintiff then walked from Ryan's office to her desk, where she answered a telephone call from her sister, and advised her that she had *281 been fired for stealing. While at her desk Ryan had another employee count the money before Mrs. Clements left. She was then accompanied home by Mrs. Orsario Gonzales, another employee.
James V. Avallone, in the accounting business for 24 years, testified he accompanied Mrs. Clements' attorney to see Ryan, who told him Mrs. Clements had been dismissed because of a discrepancy in the cash and that he would only recommend her for a job that did not entail handling cash. After an examination of the system at United China, Avallone described it as a very loose one, saying that "almost anybody could have taken the money."
Mrs. Orsario Gonzales testified she had been a co-employee of Mrs. Clements for 24 years and she had also bowled with her. She said that everyone in the office knew of the lie detector tests and that Mrs. Clements was the only employee who left the company at that time. However, she also testified that she did not know why the plaintiff left, nor did she know or care whether or not Mrs. Clements had stolen the money.
Mrs. Clements' husband testified that Ryan called him and offered to let him come over and examine the books; however, he declined unless he could bring an attorney. He also testified that his wife has not contacted any of her co-employees at United China since her termination because she was too embarrassed and humiliated. The trial court decided that Mrs. Clements' presentation of evidence failed to establish sufficient publication of any defamatory statements.
Under our jurisprudence an employer has the right to dismiss an employee suspected of wrongdoing and need not predicate such dismissal on "judicial proof" of wrongdoing. This court said in the case of Senac v. L. M. Berry Company, 299 So.2d 433, 434 (1974):
"Article 2747 of the Civil Code states:
`A man is at liberty to dismiss a hired servant attached to his person or family without assigning any reason for so doing. The servant is also free to depart without assigning any cause.'
"It is clear from the jurisprudence of this state, based on Article 2747, a contract of employment for an indefinite time, as in the instant case, can be terminated at the will of either party. See Pechon v. National Corporation Service, 234 La. 397, 100 So.2d 213 (1958)."
It is the circumstances surrounding her dismissal which Mrs. Clements asserts as the basis of her defamation suit. It is clear from the testimony that Ryan did ask Mrs. Clements and several other employees to submit to a lie detector test and that there had apparently been some discrepancies in the cash records of the company. In the case of Rougeau v. Firestone Tire and Rubber Company, 274 So.2d 454, 457 (La.App. 3d Cir. 1973), the court said:
"Defendant reasonably conducted an investigation into the suspected wrongdoings of its employees, which it had a right to do. Toomer v. Breaux, 146 So.2d 723 (La.App. 3 Cir. 1962); Lancaster v. Hibernia Bank and Trust Co., 163 La. 821, 112 So. 798 (1927); Gilliland v. Feibleman's, Inc., 161 La. 24, 108 So. 112 (1926); Raggio v. Morgan's Louisiana and Texas R and S.S. Company, 148 La. 209, 86 So. 747 (1920). * * *"
Since there were cash discrepancies, an investigation on the part of Ryan was in order.
In the case of Wilson v. Capital City Press, 315 So.2d 393, 397 (La.App. 3d Cir. 1975), writ refused October 10, 1975, the court said:
"In Louisiana defamation is a quasi offense and as such is governed by Louisiana Civil Code Article 2315. Wisemore v. First National Life Insurance Company, 190 La. 1011, 183 So. 247 (1938); Vicknair v. Daily States Pub. Co., 153 La. 677, 96 So. 529 (1923). In order for defamatory words to be actionable in Louisiana proof of the following elements are necessary:
1. Publication, that is, communication to some person other than the one defamed;
*282 2. Falsity;
3. Malice, actual or implied; and
4. Resulting injury.
Rougeau v. Firestone Tire and Rubber Company, 274 So.2d 454 (La.App. 3rd Cir. 1973); Sas Jaworsky v. Padfield, 211 So.2d 122 (La.App. 3d Cir. 1968); Comment 28 La.L.Rev. 82 (1967)."
Although Mrs. Clements testified that Ryan told her she was being fired for stealing, she also said that they were alone in his office when he accused her of the theft. There was no testimony that anyone else had been told by Ryan that Mrs. Clements was suspected of stealing money except Ronald Lauland, the man who had conducted the lie detector tests; Mr. Clements; and Avallone, the bookkeeper. There was also some testimony that Alfonso Wagner, Jr., vice president of United China & Glass Company, had been present during some of the conversations between Lauland and Ryan. However, it is our opinion that these individuals enjoyed a qualified privilege to receive these communications from Ryan.
In Ward v. Sears, Roebuck & Co., 339 So.2d 1255, 1261 (La.App. 1st Cir. 1976), the court observed:

"Toomer v. Breaux, 146 So.2d 723 (La.App. 3rd Cir. 1962), establishes the rule that a publication enjoys a qualified or conditional privilege if made (a) in good faith; (b) on any subject matter in which the person communicating has an interest or in reference to which he has a duty; and, (c) to a person having a corresponding interest or duty. This privilege arises from the social necessity of permitting full and unrestricted communication concerning a matter in which the parties have an interest or duty, without inhibiting free communication in such instances by the fear that the communicator will be held liable in damages if the good faith communication later proves to be untrue or inaccurate." (Emphasis ours.)
In further explanation of the requirement of "good faith" the court explained in Ward, supra, also at page 1261:
"In this context good faith means a statement made with reasonable grounds for believing it to be true. Only when lack of such reasonable grounds is found can it be said the person uttering the statement is actuated by malice or ill will. On grounds of public policy, our law recognizes certain communications as privileged and, as such, they may not serve as grounds for imposing liability for defamation."
Mrs. Clements failed to bear the burden of showing that this good faith did not exist. Although Lauland's testing contravened the conclusion that Mrs. Clements had committed the thefts, Ryan felt Lauland's machine was in error and, indeed, called to tell him so. Avallone also testified that he believed Ryan's conclusions were in error. The witnesses, however, did not claim that Ryan himself believed he was in error nor was it proven that Ryan had made these statements with actual or implied malice. Neither was Ryan called by the plaintiff to explain what his reasons were for believing Mrs. Clements was guilty.
We agree with plaintiff's observation that it is well settled that words which impute crime to another are libelous per se and proof of malice is not required. Martin v. Markley, 202 La. 291, 11 So.2d 593 (1942); Edwards v. Derrick, 193 La. 331, 190 So. 571 (1939); Cotonio v. Guglielmo, 176 La. 421, 146 So. 11 (1933); Fitzpatrick v. Daily States Pub. Co., 48 La.Ann. 1116, 20 So. 173 (1896); Savoie v. Scanlan, 43 La.Ann. 967, 9 So. 916 (1891); Wilson v. Capital City Press, supra; and Parsons v. Gulf & South American Steamship Co., 194 So.2d 456 (La.App. 4th Cir. 1967).
However in the instant case we find (1) that the plaintiff failed to show that Ryan lacked good faith in his communications with persons entitled to receive such communication, and (2) that Ryan was within the privilege the law extends to conversations under circumstances such as in this case.
The court said in Ward, supra, at page 1261, in discussing the burden of proof for defamation actions:
*283 "* * * Our jurisprudence holds that in cases of this nature the preponderance of proof required for making out a plaintiff's case is greater than in ordinary civil cases. D'Echaux v. D'Echaux, 133 La. 123, 62 So. 597 (1913); Sterkx v. Sterkx, 138 La. 440, 70 So. 428 (1915); Lamartiniere v. Daigrepont, 168 So.2d 370 (La.App. 3d Cir. 1964)."
Summing up, we find that Ryan, suspicious of theft in his company, conducted a reasonable investigation to determine the guilty employee, that as a result, individuals necessarily involved in the investigation, as well as employees of the company, were, by the nature of the investigation, aware that Mrs. Clements was suspect and eventually fired because of this suspicion. We do not find, however, that plaintiff established malice on the part of Ryan and United China & Glass Company or that Ryan or United China had made any publication of their accusations about the plaintiff to anyone not legally privileged to receive such communications.
The factual finding of the trial judge that plaintiffs had failed, after putting in all of their evidence, to prove that communications necessary to make out a case of defamation can not be disturbed on appeal absent the manifest error required by Canter v. Koehring Company, 283 So.2d 716 (La.1973). We do not find such error.
We therefore affirm the judgment of the trial court granting defendants' motion for a directed verdict.
AFFIRMED.