488 So.2d 743 (1986)
Sandra G. THIBODEAUX and Carlos Rodriguez, Plaintiffs-Appellants,
v.
SOUTHWEST LOUISIANA HOSPITAL ASSOCIATION, et al., Defendants-Appellees.
No. 85-284.
Court of Appeal of Louisiana, Third Circuit.
May 14, 1986.
*744 Russell T. Tritico, and George Perez, Jr., Lake Charles, for plaintiffs-appellants.
Raggio & Cappel, Chris Trahan, Brame & Bergstedt, John E. Bergstedt, Thomas & Hardy, Robert W. Thomas, Lake Charles, for defendants-appellees.
Before STOKER, DOUCET and FALKENHEINER[*], JJ.
FALKENHEINER, Judge Pro Tem.
Plaintiffs, Sandra G. Thibodeaux and Carlos Rodriguez, seek damages from the defendants, alleging the following causes of action:
(1) Southwest Louisiana Hospital Association, doing business as the Lake Charles Memorial Hospital, its insurer, St. Paul Fire & Marine Insurance Company, for wrongful discharge from employment and for defamation.
(2) Arthur G. Newman, individually, and Newman and Associates, and their insurer, Great Southwest Fire Insurance Company, for negligent performance of a polygraph test administered to plaintiffs and for defamation.
(3) Larry North and Pinkerton, Inc., for wrongful discharge from employment and for defamation.
All defendants filed motions for summary judgment. The Trial Court granted the motion filed by Arthur G. Newman, Newman and Associates, and their insurer, Great Southwest Fire Insurance Company, in its entirety and dismissed all claims as to those defendants. The motion filed for summary judgment filed by Southwest Louisiana Hospital Association and its insurer, St. Paul Fire & Marine Insurance Company, was partially granted to the extent that it dismissed plaintiffs' claims for wrongful discharge and as to any claims for defamation which occurred prior to, and including the date of, their termination of employment by the hospital.
The motion for summary judgment filed by Larry North and Pinkerton, Inc. was also partially granted to the extent that it dismissed plaintiffs' claims for wrongful discharge and as to claims for defamation occurring prior to, and including the date of, termination of employment of the hospital.
Plaintiffs have appealed, contending that the summary judgments rendered by the Trial Court were erroneous insofar as they dismissed any of the plaintiffs' claims against any of the defendants. None of the defendants have answered the appeal.

FACTS
Both plaintiffs were employed in the business office of Lake Charles Memorial Hospital. Thibodeaux's employment commenced on March 5, 1978, and Rodriguez's on May 2, 1977. Both were discharged on October 5, 1982, and prior to that time *745 there had been no criticism of the job performance of either plaintiff.
In September, 1982, a shortage of funds was discovered in the section of the business office in which these plaintiffs were employed. The hospital asked all employees in that section to submit to polygraph examinations which were administered by Newman and Associates, an independent contractor obtained by the hospital for that purpose. All initial examinations were conducted by John J. Carruthers, an employee of Newman and Associates. Mr. Carruthers reached the conclusion that plaintiffs had not been completely truthful during their examinations and conveyed this information to the hospital in a report dated October 2, 1982.
Plaintiffs then complained to the hospital that they had not been treated fairly by the polygraph operator, and they were offered the opportunity of re-examination. On October 4, 1982 both plaintiffs were again examined by Newman and Associates, but this time the examination was conducted by Arthur G. Newman, who reached the same conclusion as Mr. Carruthers. Upon receipt of Newman's report, the hospital discharged both plaintiffs.

ISSUES
Plaintiffs-Appellants urge that the record in this case presents the following general issues:
(1) Whether particular employment practices stated in the employer's personnel manual limit the rights of the employer to terminate an "at will" employee without cause.
(2) Whether otherwise privileged communications may be published in such a way as to become defamatory and subject the publisher to liability for damages.
(3) Whether a person by voluntarily taking a polygraph test forfeits the right to assert a claim for damages as a result of the negligent performance of the test.
(4) Whether a party, not the employer, may be held liable for the wrongful discharge of the employee by the employer.

SUMMARY JUDGMENTS
The motions for summary judgments filed by each of the defendants, the record in support thereof, and the court's judgments in response thereto must be examined in light of the following principles of law:
"A motion for summary judgment should be granted if, and only if, the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law. Thornhill v. Black, Sivalls & Bryson, Inc., 394 So.2d 1189 (La.1981); Urban Management Corp. v. Ellis L. Burns, Jr., et al., 427 So.2d 1310 (La.App. 2d Cir.1983); La. C.C.P. Art. 966. The movant for the summary judgment has the burden of affirmatively showing the absence of a genuine issue of material fact and any doubt as to the existence of such issue of material fact is to be resolved against granting the motion. White v. Baker Manor Nursing Home, Inc., 400 So.2d 1168 (La.App. 1st Cir.1981). To satisfy his burden, the party moving for the summary judgment must meet a strict standard by showing that it is quite clear as to what the truth is, and that excludes any real doubt as to the existence of material fact. Vermilion Corp. v. Vaughn, 397 So.2d 490 (La.1981). The papers supporting the position of the party moving for the summary judgment are to be closely scrutinized while the opposing papers are to be indulgently treated, in determining whether mover has satisfied his burden. Vermilion Corp. v. Vaughn, supra. Where the trial court is presented with a choice of reasonable inferences to be drawn from subsidiary facts contained in affidavits and attached exhibits, reasonable inferences must be viewed in the light most favorable to the party opposing the motion. *746 Duvalle v. Lake Kenilworth, Inc., 396 So.2d 1268 (La.1981). No summary judgment will be granted even if the trial court has grave doubts regarding a party's ability to establish disputed facts. Aydell v. Charles Carter & Co., Inc., 388 So.2d 404 (La.App. 1st Cir.1980). It is not the function of the trial court on a motion for summary judgment to determine or even inquire into the merits of the issues raised. Morris v. Louisiana Coca Cola Bottling Co., Ltd., 354 So.2d 659 (La.App. 1st Cir.1977). The weighing of conflicting evidence on a material fact has no place in summary judgment procedure. Mecom v. Mobil Oil Corp., 299 So.2d 380 (La.App. 3d Cir.1974). A motion for summary judgment is not appropriate for disposition of cases requiring a judicial determination of subjective facts, e.g., motive, intent, good faith, knowledge. See Jefferson Parish School Bd. v. Rowley Company, Inc., 305 So.2d 658 (La.App. 4th Cir.1974); Butler v. Travelers Ins. Co., 233 So.2d 271 (La.App. 1st Cir.1970). Testimony should neither be received nor considered, even with the consent of counsel, to decide a motion for summary judgment. Urban Management Corp. v. Ellis L. Burns, Jr., et al., supra; Hemphill v. Strain, 341 So.2d 1186 (La.App. 1st Cir.1976). Making evaluations of credibility has no place in determining a summary judgment. Dixie Buick, Inc. v. Lockett, 263 So.2d 56 (La.App. 4th Cir.1972); Hemphill v. Strain, supra."

See Watson v. Cook, 427 So.2d 1312 (La. App.2d Cir.1983).
THE SUMMARY JUDGMENT IN FAVOR OF SOUTHWEST LOUISIANA HOSPITAL ASSOCIATION, D/B/A LAKE CHARLES MEMORIAL HOSPITAL AND ST. PAUL FIRE & MARINE INSURANCE COMPANY.
Plaintiffs' cause of action against these two defendants was for wrongful discharge from employment and for defamation. Plaintiffs admit that there was no specific contract of employment with this defendant and that they were "at will" employees. They contend, however, that the defendants' employee's personnel manual constituted an implied exception to "at will" employment, and by virtue of the comprehensive provisions of the manual, the hospital implies to the employee that he is not "at will", but can only be discharged for cause. Plaintiffs' position is therefore to the effect that these plaintiffs were employed for an indefinite term, and could only be terminated for cause. Plaintiffs admit that there is no specific contractual language to that effect, but reached this conclusion by implication.
It is true that defendant's personnel manual is quite comprehensive, but there is nothing in it which would justify the implications sought by plaintiffs. The fact that the employee's manual categorizes employees as probationary and permanent, and that these plaintiffs would be in the permanent category, is one of the specific provisions upon which plaintiffs seek to justify their position.
However, it is clear from reading the manual that these categories were established solely for the purpose of creating a class of employees who were not eligible for certain benefits, i.e., probationary employees, and those employees who are eligible for the various benefits described in the manual, i.e., permanent employees.
The manual contains a specific provision stating that:
"Employment at Lake Charles Memorial Hospital is a mutual arrangement and may be terminated by either you or the hospital...."
All of this seems to fit clearly within the Louisiana law as codified in Article 2747 of the Civil Code.
"Article 2747. CONTRACT OF SERVANT TERMINABLE AT WILL OF THE PARTIES.
A man is at liberty to dismiss a hired servant attached to his person or family, without assigning any reason for so doing. The servant is also free to depart without assigning any cause."

*747 See also Williams v. Delta Haven, Inc., 416 So.2d 637 (La.App. 2d Cir.1982); Griffith v. Sollay Foundation Drilling, Inc., 373 So.2d 979 (La.App. 3d Cir.1979).
These plaintiffs were free to leave their employment at any time and defendant was free to terminate their employment at any time. There is nothing in this record which would justify a contrary conclusion.
We also adopt the ruling of the Trial Court on this issue as follows:
"SOUTHWEST LOUISIANA HOSPITAL ASSOCIATION and ST. PAUL FIRE & MARINE INSURANCE COMPANY: The law is well settled that an employer may discharge at will an employee hired for an indefinite time without assigning any reason for so doing. (LSA-C.C. 2747, Senac v. L.M. Berry Co., 299 So.2d 433, Clements v. Ryan, 382 So.2d 279), and other cases to the same effect.
Neither plaintiff had a definite time contract of employment. Also, an employer may conduct an investigation into suspected wrongdoing of its employees without for that reason becoming liable for defamation because others are aware of the investigation and subsequent discharge of particular employees. (Clements v. Ryan, supra.)
Affidavits, depositions and other evidence clearly demonstrate that in this case the investigation and subsequent discharge of both plaintiffs were conducted by the Hospital in a very discreet manner. Supervisory personnel made no accusations of dishonesty and maintained the investigation strictly among those who had a responsibility in connection therewith. There is not shown to be any factual issue in this regard, up to the time of discharge."
On the issue of defamation, there is nothing in this record which would indicate that any of the five elements constituting a cause of action for defamation existed. That is:
1. Defamatory words.
2. Publication.
3. Falsity.
4. Malice, actual or implied.
5. Resulting injury.
See Cangelosi v. Schwegmann Brothers Giant Super Markets, 390 So.2d 196 (La. 1980).
Plaintiffs' own affidavit submitted in opposition to the motion for summary judgment show that these elements, if they did exist at all, came into existence after plaintiffs' discharge. The Trial Court's summary judgment does not, of course, affect any cause of action arising after plaintiffs' discharge from employment.
Furthermore, the record at this point indicates that even if the elements of defamation existed, that the qualified privilege would apply. See White v. Baker Manor Nursing Home, Inc., 400 So.2d 1168 (La. App. 1st Cir.1981).
THE SUMMARY JUDGMENT IN FAVOR OF NEWMAN AND ASSOCIATES, ARTHUR G. NEWMAN AND GREAT SOUTHWEST FIRE INSURANCE COMPANY
It is conceded that these defendants had no part in the decision to discharge the plaintiffs, nor did they have anything to do with any employment policies of the Lake Charles Hospital. They were simply employed by the hospital to administer the polygraph examinations to plaintiffs and other employees in their particular work section. The affidavits and other documents submitted by these defendants setting forth the relationship between them and the hospital, and the record of the two polygraph tests administered to each of these plaintiffs are uncontroverted and not contested. There is nothing whatsoever to indicate that these tests were administered in an improper or negligent manner.
It is also admitted that the persons administering the polygraph tests were duly licensed in the State of Texas, but were not licensed in the State of Louisiana. (See LSA-R.S. 37:2831, et seq.)
Plaintiffs admit that there was no publication by these defendants, and that their *748 communication of the polygraph test results to the hospital was privileged.
However, plaintiffs allege that the polygraph examination was negligently performed because the operator was not certified under Louisiana law, and therefore the conditional privilege would not apply. Other than the lack of certification under Louisiana law, there is nothing whatsoever to indicate that these polygraph tests were administered in a negligent or improper manner. The record indicates quite the contrary in that plaintiffs submitted to the tests voluntarily. In fact, the second test was specifically at their request. The possibility that some of the questions may have caused some discomfort or anxiety to plaintiffs is inconsequential and apparently an unavoidable and natural consequence of many polygraph tests.
We also find that the Trial Court properly disposed of this issue in written reasons which we adopt as follows:
"NEWMAN AND ASSOCIATES, ARTHUR G. NEWMAN and GREAT SOUTHWEST FIRE INSURANCE COMPANY: Defendant was engaged to and did, on two occasions, conduct polygraph examinations of these two plaintiffs as well as one examination on each of two other Hospital employees. Defendant never made any accusation or wrongdoing by either plaintiff and communicated its interpretations of the test results to its principal without disclosure to any third party. It enjoyed a position of privilege in that regard and may not be held liable for the disclosure.
Plaintiffs do create an issue herein as to whether or not the test results were false or not, but the affidavits and depositions clearly demonstrate good faith on the part of Newman without being controverted by plaintiffs. There is a clear unrebutted showing that Newman did not make a defamatory statement concerning either plaintiff. Even were the opposite to be the case, it was made in good faith, to one having a corresponding interest, by one having a duty in that regard, and defendant would not be liable therefor even if the information should later turn out to be incorrect. (Toomer v. Breaux, 146 So.2d 723.)
The depositions of plaintiff and the affidavit of defendant, filed in connection with this motion, leave no issue of fact as to whether any tort was committed against either plaintiff during the performance of the tests. The most that is shown by plaintiffs is that they were uncomfortable with the proceedings and possibly felt somewhat insulted by some of the questioning. Plaintiffs voluntarily submitted to the tests and the demonstrated questioning was not improper under the circumstances."

THE SUMMARY JUDGMENT IN FAVOR OF LARRY NORTH AND PINKERTON, INC.
Larry North was the employee of Pinkerton, Inc., which had a contract for security with Lake Charles Memorial Hospital. Pinkerton assigned Larry North as its chief of security at the hospital. He had nothing to do with the employment policies or with the decision to discharge these plaintiffs. The only thing this record shows is that he performed the duties assigned to him relating to security. At the request of the hospital, he did arrange for the polygraph services of Newman and Associates.
We find nothing in this record which would require a different result from that stated above with respect to the Lake Charles Memorial Hospital. Neither Larry North, nor his employer, Pinkerton, Inc., had anything to do with the discharge, wrongful or not, of the plaintiffs, and there was no defamation by him. The Trial Court disposed of this issue in his reasons for judgment which we also adopt as follows:
"PINKERTON and LARRY NORTH: Evidence offered in connection with this motion makes no issue that Larry North did anything other than discreetly perform his duty in connection with the investigation and discharge of plaintiffs, in *749 all of which he enjoyed a qualified privilege. (Clements v. Ryan, supra.) Issue exists as to whether or not he may have uttered defamatory remarks about plaintiffs subsequent to their discharge, to persons who had no duty or privilege therein."
The judgment of the Trial Court is therefore affirmed.
AFFIRMED.
NOTES
[*] FALKENHEINER, Judge Pro Tempore.