839 So.2d 408 (2003)
John DOE, M.D.
v.
Sr. Barbara GRANT, Nicholas J. Angelica, M.D., E.H. Goodier, M.D., and Mercy Hospital.
No. 2001-CA-0175.
Court of Appeal of Louisiana, Fourth Circuit.
January 29, 2003.
Writ Denied May 2, 2003.
*411 Kyle Schonekas, Marc D. Winsberg, Patrick S. McGoey, Thomas M. McEachin, *412 Schonekas, Winsberg, Evans & McGoey, L.L.C., New Orleans, LA, for Appellant, Bahram Zamanian, M.D. and Bahram Zamanian, M.D., A Professional Corporation.
Bruce A. Cranner, Thomas B. Delsa, Gary L. Hanes, Frilot, Partridge, Kohnke & Clements, L.C., New Orleans, LA, for Christian Health Ministries, Nicholas J. Angelica, M.D., and Vincent A. Culotta, Jr., M.D.
Judith W. Giorlando, Wendy Hickok Robinson, Gordon, Arata, McCollam, Duplantis & Eagan, L.L.P., New Orleans, LA, Amicus Curiae, Louisiana State Medical Society and its Component Medical Societies.
John A. Stassi, II, Janet L. White, Christovich & Kearney, L.L.P. New Orleans, LA, Amicus Curiae, Metropolitan Hospital Council of New Orleans, Inc.
Basile J. Uddo, Metairie, LA, Amicus Curiae, Memorial Medical Center Baptist Medical Staff and the New Orleans Academy of Internal Medicine.
(Court composed of Judge CHARLES R. JONES, Judge PATRICIA RIVET MURRAY, Judge TERRI F. LOVE).
TERRI F. LOVE, Judge.
Dr. Bahram Zamanian[1], plaintiff in this action, brought suit against Christian Health Ministries, D/B/A Mercy Hospital, Nicholas J. Angelica, M.D., and Vincent A Culotta, Jr., M.D., for damages and injunctive relief claiming defamation, bad faith breach of contract, tortious interference with contractual relations, unfair trade practices, and intentional infliction of emotional distress. The trial court directed verdict in favor of the defendants on all claims except defamation. The jury returned a verdict in favor of Dr. Zamanian, awarding him $6 million in damages for defamation. The trial court granted defendant's motion for JNOV and conditionally granted a new trial. It is from this decision that Dr. Zamanian brings the instant appeal. For the reasons outlined below, we affirm the ruling of the trial court.

FACTS AND PROCEDURAL HISTORY
Dr. Bahram Zamanian was granted unrestricted staff privileges to practice cardiology at Mercy Hospital in New Orleans in 1987. Dr. Zamanian specializes in interventional cardiology and has performed hundreds of procedures known as Percutaneous Transluminal Cardiac Angioplasty ("angioplasty").
On April 28, 1993, Dr. Zamanian performed an angioplasty on Daisy Mearis. Ms. Mearis was considered a high-risk patient, due to her age and significant blockage in her arteries. During the procedure, Dr. Zamanian successfully dialated two of Ms. Mearis' arteries. However, one of her arteries re-occluded. When Dr. Zamanian attempted to remove the ballon catheter, it split and lodged in Ms. Mearis' heart. Ms. Mearis died during the procedure.
Approximately one month after Ms. Mearis' death, Dr. Vincent A. Culotta, Jr., a defendant in the instant action, informed Dr. Zamanian that he was appointed chairman of the Ad Hoc Committee formed to review the Mearis case. Dr. Travis Harrison, Chairman of Mercy's Quality Care Review Committee, asked the Ad Hoc Committee to look into the indication of Ms. Mearis for angioplasty and Dr. Zamanian's performance of the procedure.
Dr. Zamanian contends that this Ad Hoc committee did not include a cardiologist, but relied almost exclusively on the opinions solicited from three Mercy Hospital *413 cardiologists, who in Dr. Zamanian's words were his "direct economic competitors", to review his performance in the Mearis case.
Dr. Zamanian asserts that the peer review process was tainted. He contends the Ad Hoc committee gave its cardiology consultants limited information about the events leading up to Ms. Mearis' death, which did not include her medical history, and never allowed Dr. Zamanian to explain his actions and the procedure to the cardiologists. The Ad Hoc committee also solicited the opinion of Dr. Louis Deane, a cardiologist at an affiliated hospital in St. Louis, Missouri. Dr. Deane rendered his opinion on the Mearis case to Mark Stauder, Mercy's Chief Operating Officer.
When the findings of the Ad Hoc committee were presented to the Medical Executive Committee, Dr. Zamanian was summarily suspended. He contends the report of the Ad Hoc committee, which led to his suspension, was riddled with omissions and misrepresentations.
Dr. Zamanian, exercising his rights, appealed the Medical Executive Committee's decision to a Hearing Committee of five doctors, four appointed by Mercy Hospital, one appointed by Dr. Zamanian. This Hearing Committee reviewed the entire record of the Mearis case, including testimony from seventeen witnesses and briefs by the Medical Executive Committee and Dr. Zamanian. On December 29, 1993, the Hearing Committee issued a written report and recommendation that rejected the summary suspension or the restrictions placed on Dr. Zamanian. The Board of Trustees, after reviewing the evidence, followed the recommendation of the Medical Executive Committee to summarily suspend Dr. Zamanian.
Dr. Zamanian alleges that the actions taken against him by the hospital were financially motivated and the entire process permanently damaged his reputation. On April 28, 1994, Dr. Zamanian filed an amended and supplemental petition for damages and injunctive relief, and sought damages to his practice and reputation. Dr. Zamanian also asserted claims for bad faith breach of contract, defamation, tortious interference with contractual relations, unfair trade practices, and intentional infliction of emotional distress.
On June 26, 2000, defendants moved for directed verdict on all claims. The trial court granted the directed verdict with respect to the bad faith breach of contract, unfair trade practices, and tortious interference with contractual relations claims in favor of the defendant. After the defendants presented their case, the trial court granted a directed verdict in favor of the defendants on the intentional infliction of emotional distress claim.
The jury returned a verdict on the defamation claim in favor of Dr. Zamanian and awarded him $6 million. The jury apportioned 50% of the fault to Mercy Hospital, 40% to Dr. Culotta, and 10% to Dr. Angelica.
The defendants moved for a JNOV, or alternatively, a new trial. The trial court granted the JNOV finding that "the evidence reflected no genuine issue of fact." The trial court also conditionally granted the defendant's motion for new trial, finding that since the Hearing Committee found the actions of the defendant were in good faith, and as such, they were entitled to immunity.
Accordingly, Dr. Zamanian took the instant appeal. He seeks review of the JNOV and granting of a conditional new trial, and the directed verdict on his bad faith breach of contract claim.
DISCUSSION
In his first assignment of error, Dr. Zamanian argues the trial court erred in *414 granting the defendant's motion for JNOV, and conditionally ordering a new trial.
The Supreme Court, in Anderson v. New Orleans Pub. Serv., 583 So.2d 829 (La.1991), set the standard of review for JNOVs. Citing Scott v. Hosp. Serv. Dist. No. 1, 496 So.2d 270 (La.1986), the Court stated:
A JNOV is warranted when the facts and inferences point so strongly and overwhelmingly in favor of one party that the court believes that reasonable men could not arrive at a contrary verdict. The motion should be granted only when the evidence points so strongly in favor of the moving party that reasonable men could not reach different conclusions, not merely when there is a preponderance of evidence for the mover. If there is evidence opposed to the motion which is of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions, the motion should be denied.
In making this determination, the court should not evaluate the credibility of the witness, and all reasonable inferences or factual questions should be resolved in favor of the non-moving party. Anderson at 832. In reviewing a JNOV, the appellate court must first determine if the trial court erred in granting the JNOV. This is done by using the aforementioned criteria just as the trial judge does in deciding whether to grant the motion or not, i.e. do the facts and inferences point so strongly and overwhelmingly in favor of the moving party that reasonable men could not arrive at a contrary verdict. Id.
In his reasons for judgment the trial court judge stated:
It is the Court's opinion that the evidence reflects no genuine issue of fact. And under that evidence reasonable minds could not differ on both the issue of liability and on damages. The judgment not withstanding the verdict is therefore granted on both the issue of liability and on the issue of damages.
The Court has never varied in its opinion on liability or damages. However, it felt compelled, by my reading of the opinion of the Court of Appeals in their prior decision in this case, to give them the benefit of a complete record for their review. But for that decision, the Court would have granted the directed verdict in this case long ago.
The Court feels that the record is now complete and that this matter will not be returned to the district level again.
If for some reason this decision is vacated or reversed, the Court further rules on the new trial issue, while reiterating the judgment notwithstanding the verdict in favor of all three Defendants on both the issue of liability and damages, the Court conditionally grants a new trial on the grounds that at the full hearing conducted by the Peer Review Committee headed by Drs. Garcia-Oller and Kitziger it was determined that everyone prior thereto, including the Defendants who appeared on previous Peer Review Committee, had acted in good faith and which clearly in this Court's opinion triggers the immunity statue (sic) of both the federal and the state laws.
Likewise, the record clearly reflects no loss earning nor damages by Plaintiff subsequent to the action of the Executive Committee.
For these reasons and for others that appear in the request for judgment notwithstanding the verdict in the record and in the arguments of counsel, especially in this Court's opinion the lack of credible and obtainable accurate evidence of referral to the Plaintiff, as well *415 as the information that was argued here today about whether or not that unit was stretched to failure, the Court would grant a new trial on both the facts and the law. The granting of a new trial is therefore conditional in view of the granting of the judgment notwithstanding the verdict on both liability and damages against all the Defendants herein.
In order to determine whether the trial court's granting of defendants' motion for JNOV was correct, we shall review the plaintiff's claim for defamation to determine if the facts and inferences point so strongly and overwhelmingly in favor of the defendants that reasonable persons could not arrive at a different verdict.
DEFAMATION
"To prevail on a claim of defamation, plaintiff has the burden of proving by a preponderance of the evidence five essential elements: defamatory words, publication, falsity, malice and resulting injury. If even one of these elements is absent, the cause of action fails." Sommer v. State, Dept. of Transp. and Dev., 97-1929, 25 (La.App. 4 Cir. 3/29/00), 758 So.2d 923, 939, writ denied, XXXX-XXXX (La.10/27/00), 772 So.2d 122.
Defamatory words are those which tend to harm the reputation of another so as to lower him in the estimation of the community or to deter third persons from associating with him. Sommer, 97-1929, p. 26, 758 So.2d at 939. To be actionable, the words must be communicated or published to someone other than the plaintiff. Id. Words that expressly or implicitly accuse another of criminal conduct or that, by their nature, tend to injure one's personal or professional reputation are considered defamatory per se. Id. If the plaintiff proves publication of defamatory per se words, the elements of falsity, injury and malice are presumed, although they may be rebutted by the defendant.
Id. (citing Arledge v. Hendricks, 30,0588, pp. 3-4 (La.App. 2 Cir. 6/26/98), 715 So.2d 135, 138). To rebut this presumption, defendants have the burden of proving a reasonable belief in the truth of the statements. See Sommer, 97-1929, p. 29, 758 So.2d at 940.
Dr. Zamanian asserts four documents to support his claim of defamation.
1) The Ad Hoc Committee Report: In the Ad Hoc Report, Dr. Culotta stated (as the author): "Two of the cardiologists interviewed stated that they felt it was below the standard of care to even attempt this case and that there was substandard performance of the procedure."
2) Deane Statement: Dr. Culotta's statement to the Medical Executive Committee on June 29, 1993, that they consulted St. Louis cardiologist (Dr. Deane) who said that it was highly risky to perform angioplasty on Ms. Mearis.
3) Summary Suspension Letter: The summary Suspension letter, written by Mercy Administration and signed by Sr. Grant, Dr. Angelica, and Dr. Goodier.
4) Reaffirmation Letter: the Reaffirmation letter to the Board of Trustees, written by Mercy Administration and signed by Dr. Angelica, stating that despite the Hearing Committee's findings, the MEC reaffirmed its decision to summarily suspend Dr. Zamanian.
Each of the above statements qualifies as defamatory per se. Each calls into question Dr. Zamanian's practice as a doctor and whether he had used the appropriate standard of care in the Mearis case. It doesn't matter as the defendants suggest, that there was no defamatory intent. The threshold question is whether the *416 statements would have the tendency to diminish the reputation of Dr. Zamanian. The statements cited by Dr. Zamanian all call into question his practice and judgment as a cardiologist in performing a procedure that in this case resulted in the death of his patient. It is clear that the statements would have the effect of diminishing Dr. Zamanian's reputation as a cardiologist. We find the statements in question are defamatory per se. Therefore, upon proof of publication, malice, falsity and damages are presumed.
Publication refers to any nonprivileged communication of defamatory words, written or oral, and it renders a defendant liable "for all republication that is the natural and probable consequence of the author's act." Landrum v. Board of Commissioners of the Orleans Levee District, 95-1591, p. 11 (La.App. 4 Cir. 11/27/96), 685 So.2d 382, 390 (citing Martin v. Lincoln General Hospital, 588 So.2d 1329, 1333 (La.App. 2 Cir.1991). However, "statements between employees, made within the course and scope of their employment, are not statements communicated or publicized to third persons so as to constitute a publication." Bell v. Rogers, 29,757, p. 10 (La.App. 2 Cir. 8/20/97), 698 So.2d 749, 756 (citing Marshall v. Circle K Corp., 715 F.Supp. 1341, 1343 (M.D.La. 1989)).
Dr. Zamanian points to three incidents to support his assertion that the alleged defamatory statements were published.
1) Dr. Culotta shared the Ad Hoc Report with members of Mercy Medical Staff.
2) Mercy Administration told the nursing staff and others at the hospital that Dr. Zamanian's privileges had been summarily suspended.
3) Dr. Angelica told the Board that the MEC had reaffirmed its decision to summarily suspend Dr. Zamanian.
Clearly, what Dr. Zamanian cites as incidences of publication, are in actuality communications between employees of the hospital during the course and scope of their employment. The disclosures regarding the summary suspension were the direct outcome of the peer review process, and necessary to ensure not only the safety of patients at the hospital, but to ensure that the doctors and nurses on Mercy's staff were aware that Dr. Zamanian's privileges had been suspended. These disclosures therefore cannot be considered published for the purposes of a defamation claim. Since there is no publication of defamatory words, Dr. Zamanian's claim of defamation fails.
Assuming arguendo, that the statements cited by Dr. Zamanian, were published for the purposes of the defamation claim and, accordingly, malice, falsity and damages are presumed, his claim still fails because the defendants are protected by qualified privilege. Even if plaintiff makes a prima facie showing of the essential elements of defamation, there is no recovery if defendant bears its burden of proving that the statement was protected by an absolute or qualified privilege. Sommer, p. 32, 942 (citing Arledge v. Hendricks, 30,588, p. 4 (La.App. 2 Cir. 6/26/98)), 715 So.2d 135, 139. An otherwise defamatory publication enjoys a qualified conditional privilege if made (a) in good faith; (b) on any subject matter in which the person communicating has an interest or in reference to which he has a duty; and (c) to a person having a corresponding interest or duty. Kelly v. West Cash & Carry Building Materials Store, 99-0102, p. 11 (La.App. 4 Cir. 10/20/99), 745 So.2d 743, 752 (citing Clements v. Ryan, 382 So.2d 279, 282 (La.App. 4 Cir. 1980)).

*417 In Smith v. Our Lady of the Lake Hospital, 93-2512 (La.7/5/94), 639 So.2d 730, the Supreme Court discussed the availability of qualified immunity from a defamation claim stemming from the peer review of a cardiologist whose hospital privileges were suspended. The Court acknowledged the overriding need to protect such activities as a hospital peer review procedure from doctors whose privileges have been suspended.
The conditional privilege rebuts the plaintiff's allegations of malice and places the burden of proof on the plaintiff to establish malice and lack of good faith. [I]n effect assertion of a qualified [or conditional] privilege constitutes a rebuttal of the allegation of malice. Consequently, "[m]ere allegations of malice and bad faith, even with specifications of personal animosity and possible prior overreaching of authority, will not suffice to allow an action against hospital personnel engaging in peer review."
(Internal citations omitted).
Smith, 93-2512, pp. 20-21, 639 So.2d at 746-747.
The Health Care Quality Improvement Act of 1986 ("HCQIA") shields good faith medical peer review from federal and state causes of action. Under 42 U.S.C. § 11112(a)(1) the participants in a professional review body are not liable for damages as a result of the review process provided that the review is taken:
1) In the reasonable belief that the action was in the furtherance of quality health care,
2) After a reasonable effort to obtain the facts of the matter,
3) After adequate notice and hearing procedures are afforded to the physician involved or after such other procedures as are fair to the physician under the circumstances, and
4) In the reasonable belief that the action was warranted by the facts known after such reasonable effort to obtain facts and after meeting the requirement of paragraph (3).
A professional review action shall be presumed to have met the preceding standards necessary for the protection set out in section 11111(a) of this title unless the presumption is rebutted by a preponderance of the evidence. 42 U.S.C. § 11112(a).
In 1983, Louisiana enacted the Louisiana Peer Review Statute ("LPRIS"). It states in pertinent part:
No member of any such committee designated in Subsection A[2] of this Section or Sponsoring entity, organization, or association on whose behalf the committee is conducting its review shall be liable in damages to any person for any such action taken or recommendation made within the scope and functions of such committee if such committee member acts without malice and in the reasonable belief that such action or recommendation is warranted by facts known to him.
La. R.S. 13:3715.3(C).
In Smith, the Supreme Court discussed both the federal and state statutes and found that lack of malice and good faith exists when the defendantspeer review committee members are shown to have a reasonable basis for their action or recommendation made in the course of the peer review process. Smith, 93-2512, p. 25, 639 So.2d at 749. The burden of establishing the lack of good *418 faith or the presence of malice is on the plaintiff-physician. Smith, 93-2512, p. 26, 639 So.2d at 750.
Reviewing the entire record, we find that Dr. Zamanian did not establish malice or lack of good faith in the peer review process. Mercy Hospital took the necessary steps to conduct a proper peer review. In order to show bad faith on the part of the defendants, Dr. Zamanian would have had to offer proof that Dr. Culotta intentionally lied about the statements from two of the cardiologists who evaluated Dr. Zamanian's performance, or that he intentionally misrepresented the statements of Dr. Louis Deane to the Medical Executive Committee. It is clear from Dr. Deane's deposition that he had reservations about whether Ms. Mearis was a suitable candidate for angioplasty, therefore, the assertion that Dr. Culotta's statement to the Medical Executive Committee that Dr. Deane stated he thought it was "highly risky" to perform the angioplasty on Ms. Mearis cannot reasonably be construed as malicious. Dr. Zamanian failed to establish bad faith in either the Summary Suspension Letter of July 1, 1993 or the Reaffirmation Letter of January 4, 1994. Dr. Zamanian did not present evidence showing that these letters were constructed, or for that matter issued, in bad faith. On the contrary, the evidence demonstrates that the hospital was merely disciplining a doctor whose patient died during a risky procedure. The committees conducted adequate fact-finding, considered the evidence, made reasonable conclusions, and took appropriate action. There was absolutely no evidence showing that any of the actions taken in the review of Dr. Zamanian's performance were undertaken in bad faith.
Dr. Zamanian failed to provide evidence of publication of the defamatory per se statements nor did he demonstrate bad faith on the part of the defendant in order to vitiate their qualified privilege under the federal and state statutes, therefore, his claim for defamation fails. As no reasonable person could find the defendants defamed him, the trial court was correct in granting the JNOV.
Since we are affirming the trial court's granting of defendant's motion for JNOV, we pretermit discussion on the trial court's grating of a conditional new trial, as that issue is rendered moot by this opinion.
In his second assignment of error, Dr. Zamanian asserts the trial court erred in granting defendant's motion for a directed verdict on his bad faith breach of contract claim.
Pursuant to La. C.C.P. art. 1810, a motion for directed verdict is properly granted if, in viewing the facts in the light most favorable to the non-moving party, the trial court concludes that the evidence is such that reasonable and fairminded jurors cannot arrive at a verdict in favor of the non-moving party. Graham v. Ryan, 93-2155 (La.App. 4 Cir. 7/27/94), 641 So.2d 677, 678. In determining whether a trial court properly granted a directed verdict, the appellate court need not decide whether plaintiffs established their case by a preponderance of the evidence. Rather, the reviewing court need only decide whether reasonable, impartial minds could have reached a different conclusion. Cliburn v. Colonial Penn Ins. Co., 583 So.2d 103, 105 (La.App. 3 Cir.1991).
Dr. Zamanian asserts Dr. Culotta breached the bylaws by "hiding" Dr. Deane's report from the Medical Executive Committee, the Hearing Committee, and the Board of Trustees. He also asserts Dr. Culotta lied about the three consulting cardiologists' opinions regarding the procedure performed on Ms. Mearis, and that Dr. Culotta made "the impractical recommendation *419 of having Dr. Zamanian attend a CME course that did not exist."
Dr. Zamanian presents no evidence to show that Dr. Culotta knowingly concealed Dr. Deane's report from the Medical Executive Committee nor does he show that Dr. Culotta knowingly misrepresented the opinions of the three cardiologists. The recommendation to take the CME course, which was later found did not exist, is not a basis for finding that there was a breach of the bylaws, but merely a mistake on the part of Dr. Culotta.
Dr. Zamanian then asserts that Dr. Angelica breached the bylaws "by suspending Dr. Zamanian without a reasonable belief that Dr. Zamanian was an immediate threat to patient carea violation of § 28.03(a)." He also argues that § 28.03(b) of the bylaws requires the vote of the Medical Executive Committee to join in summary suspension and that Dr. Angelica testified that the Medical Executive Committee did not vote on summary suspension. Dr. Angelica did not recall a Medical Executive Committee meeting to reaffirm the Medical Executive Committee's position to summarily suspend Dr. Zamanian, yet he sent a reaffirmation letter to the Board of Trustees. Further, Dr. Zamanian argues, Dr. Angelica told the Board the Medical Executive Committee rejected the Hearing Committee's findings. Finally, Dr. Angelica said in the reaffirmation letter that he was sending the Board a summary of the evidence, but all he sent was the hospital's brief.
Section 28.03(a)-(b) of the Mercy bylaws states:
(a) A member of the Medical Staff may be summarily suspended whenever his/her conduct may require that immediate action be taken to protect the life of any patient or to reduce the substantial likelihood of immediate injury or damage to the health or safety of any patient, employee, or person present in the hospital.
(b) The Chief Executive Officer (or in his/her absence his/her designee), in conjunction with the MEC, President and Chief of Staff (or in his/her absence the Vice President or officers in descending rank) shall have the authority to summarily suspend all or any portion of the clinical privileges of any appointee of the Medical Staff.
The record shows that the summary suspension letter was issued properly by the Medical Executive Committee in accordance with § 28.03(a) and with appropriate reasons, and was issued only after Dr. Zamanian refused to comply with the committee's initial recommendations of attending a CME course and having second opinions issued on his next fifty cases. Dr. Zamanian's assertions about Dr. Angelica's recollection of the circumstances surrounding the issuance of the summary suspension letter and the reaffirmation letter, which occurred years before Dr. Angelica testified at trial, are shown by the record to be no more than lapses in memory not rising the level of breach.
Dr. Zamanian asserts that Mercy Hospital breached the bylaws because it did not disclose the Deane report to the Hearing Committee or Dr. Zamanian; and that Mercy Hospital prepared the summary suspension letter and reaffirmation letter, which it knew contained false statements. Finally, Dr. Zamanian argues that Mercy Hospital breached the bylaws "when it invited Dr. Angelica, but did not invite Dr. Zamanian to give an oral presentation", in violation of § 29.06(a).
There is no evidence that it was a breach of the bylaws or that it was a violation to not present the Deane report *420 to the Hearing Committee or to Dr. Zamanian himself, nor was any evidence presented to show that it was done intentionally. Further, Dr. Zamanian presented no evidence showing that Mercy Hospital prepared the summary suspension letter and reaffirmation letter containing what it knew to be false statements. The record clearly shows these to be baseless accusations by Dr. Zamanian.
With regard to Dr. Zamanian not being invited to give an oral presentation to the Board, § 29.06(a) and (c) of the Mercy bylaws provides:
(a) If a hearing committee has been convened, the practitioner may within five (5) days of receipt of notice of their recommendation submit to the Board a written memorandum summarizing his/her position in the matter. The Medical executive Committee may also submit, within five days (5) days of the notice, a written memorandum summarizing its position in the matter.
(c) The Board decision will be made on the record. No new evidence will be considered except for good cause shown in the Board's sole discretion. An oral presentation by the Medical Staff representative and affected practitioner is allowable only in the discretion of the Board. All decisions to appoint or reappoint will include the delineation of the clinical privileges.
Dr. Zamanian was aware that he was under review, and he was aware of his rights under the bylaws to present his case. There is no affirmative duty imposed on the hospital by the bylaws to allow Dr. Zamanian to defend himself in person before the Board. The Board reviewed the evidence previously submitted to the Ad Hoc committee and the Medical Executive Committee, and made their decision based on that evidence as is provided in the bylaws. There is no merit to his argument that Mercy was responsible for inviting him to present his case in person to the Board.
In Smith v. Our Lady of the Lake Hospital, Inc., 93-2512, pp. 34-35 (La.7/5/94), 639 So.2d 730, 755-756, the Supreme Court, adopting the standard articulated in Owens v. New Britain General Hospital, 32 Conn.App. 56, 627 A.2d 1373 (1993), discussed compliance with hospital bylaws:
While there is no Louisiana jurisprudence on point, the consensus among other jurisdictions on the issue of the effect of a hospital's failure to comply strictly with its bylaws is that a "substantial compliance" rule applies. The substantial compliance rule is in accord with the purpose underlying a hospital's bylaws providing a fair process, outside the judicial system, for adjudicating staff privileges issues ... This standard presupposes that irregularities in procedural compliance will not constitute a breach of the bylaws unless the physician can establish that the hospital has failed to cure these lapses adequately or timely or that these lapses have been willfully made or have otherwise prejudiced the outcome of the process. Because the central purpose of the bylaws is to provide procedural fairness in reaching decisions regarding staff privileges, merely "technical" violations or minor deviations in the procedures employed that do not result in material prejudice to the physician or otherwise undermine the result reached by the hospital will not rise to the level of "breaches" of the hospitals obligation to comply with its bylaws.
We find that following the "substantial compliance" standard set out in Smith, Dr. Zamanian failed to show the defendants breached the bylaws. All of Dr. Zamanian's allegations of breach were shown by the record to be based on mere lapses of *421 memory, innocent mistake, or misinterpretation of the bylaws by Dr. Zamanian. These are, at most, mere technical violations and minor deviations in the review process established by the Mercy bylaws. None of the alleged breaches resulted in actual prejudice to Dr. Zamanian, nor did Dr. Zamanian demonstrate that any of the alleged breaches were willful, as required by Louisiana law. We find that the evidence is such that no reasonable person could find that the defendants breached the bylaws, and therefore the trial court did not err in granting the directed verdict in favor of the defendants.
CONCLUSION
We find the record is lacking in evidence to support either the defamation claim or the bad faith breach of contract claim. Accordingly, we affirm the trial court's granting the defendants' motions for JNOV and directed verdict.
AFFIRMED.
NOTES
[1] In the brief submitted to this court by Dr. Zamanian, he refers to himself by his proper name; therefore we will address him by his name in this opinion.
[2] Among the committees designated in La. R.S. 13:3715.3(A) are any hospital committee and peer review committees of any medical organization. The statute was amended in 1995 to extend qualified immunity to hospitals as well as individual committee members.