BRUNOT, J.
 

 This is a suit for damages for an alleged slander of plaintiff. The demand is for $30,000, the items being $15,-000 for injury to petitioner’s feelings and for mental anguish caused her, and $15,000 for the loss she has suffered because of her inability to secure employment as a result of the alleged slander. The defendants, Feibleman’s, Incorporated, and Harry Phillips, filed a joint answer to the suit, in which the employment and discharge of the plaintiff were admitted, the alleged slander denied, and all other allegations of the petition, for lack of information, were neither admitted nor denied. On the day of trial the defendants asked leave to amend their answer for the purpose of correcting an alleged erroneous admission therein relating to plaintiff’s discharge. The right to amend was denied," and upon the issues as joined the case was tried by a jury and a verdict was rendered in favor of the plaintiff and against the defendants, in solido, for $7,500, with legal interest thereon from the date thereof, and for costs. From this verdict and the judgment thereon the defendants suspensively appealed.
 

 After the transcript was filed in this court the plaintiff died, intestate, leaving neither descendants nor ascendants, but a surviving brother, who was recognized and sent into possession of her estate as her sole heir. On the application of this heir, viz. Rqy Bell, he has been substituted as party plaintiff herein in lieu of Mrs. Etta B. Gilliland, deceased.
 

 Feibleman’s, Incorporated, and its president, Harry Phillips, are the defendants in this case. The company operates a large department store in the city of Shreveport, and Mrs. Etta B. Gilliland, the original plaintiff, was a saleslady in its employ. The petition alleges that while plaintiff was thus employed she was called to the office .of Mr. Phillips, the president of the company, who, while acting in his official capacity and within the scope of his authority, did, in the presence of a Mr. Murph and various other persons whose names are unknown to petitioner, ask petitioner, in an accusatory manner and in a loud and audible voice, this question:
 

 “Wliat did you do with that crepe (silk) you cut off and made no ticket for? ”
 

 It is also alleged that in response to this question plaintiff denied cutting off crepe os silk without making a ticket for it# and thereupon Mr. Phillips, in the presence and hearing of Mr. Strauss, Mr. Cohn, and other, persons, said: . ■ '.
 

 “Xou cut off three yards of crepe (silk) and made no ticket.for it, and Miss Newman saw you do it.”
 

 The foregoing question and statement ahd the alleged manner in which theywere ad-1
 
 *27
 
 dressed to plaintiff are the sole grounds upon which this suit is based. The petition alleges that the question asked her and the statement made were equivalent to branding petitioner as a thief, shoplifter, and embezzler, and that these utterances were made by Mr. Phillips both in his official capacity as president of the company and individually, with malice, without probable cause, and with the wicked and slanderous intention of bringing petitioner into disrepute, and reflecting upon her good name and character.
 

 The answer simply denies the slander. There is no other issue presented.
 

 It is properly and peculiarly the duty of the responsible or directing head of any business to question its employees regarding the property of the concern or the conduct of its affairs. Sometimes in the performance of this duty delicate situations arise which may result in grave injury to innocent persons if acted upon imprudently and without knowledge of the exact facts.
 

 Plaintiff evidently assumes that this case presents such a situation. It is admitted that plaintiff was questioned substantially in the words recited in the petition. It is our opinion that the words are not slanderous per se. In fact, we do not think plaintiff contends that they are. Her contention is that they became So by reason of the accusatory acts and manner of the defendant Phillips at the time they were uttered. These acts and the alleged publication of the spoken words are questions of fact which must be determined from the evidence in the case.
 

 Counsel for plaintiff cite the following 'Cases in support of their contention that great weight should be given to the verdict of a jury. In Covington v. Roberson, 35 So. 586, 111 La. 326, the court held:
 

 “In cases of slander the findings of the jury will not be disturbed unless clearly erroneous, improper, and not sustained by any correct view of the evidence.”
 

 In King v. Ballard, 10 La. Ann. 557, the principle contended for by counsel was not referred to in the opinion or syllabus, and the case does not apply.
 

 In Mohrman v. Ohse, 17 La. Ann. 64, the court found that the plaintiff had conclusively proven his case.
 

 In Sibley v. Lay, 11 So. 581, 44 La. Ann. 936. a suit for defamation and malicious prosecution, the court found that the evidence did not sufficiently establish that defendant acted with malice and without probable cause, and it set the verdict aside and dismissed the suit.
 

 The jurisprudence of this state does not attach greater importance to the verdict of a jury than to judgments of a trial court upon questions of fact. Where the proof is doubtful, or a fair preponderance of the proof is not clearly ascertainable from the record, weight is given to the verdict of the jury or the judgment appealed from, and neither will be disturbed, but otherwise this court will render such judgment as, in its opinion, should have been rendered in the court below. That is all that the frequently but loosely used expression, “great weight is given to the verdict of a jury,” means.
 

 We have read the testimony in this ease carefully. The plaintiff has testified to all of the allegations of the petition, but her testimony upon the material facts of the case are not corroborated by any one, while the testimony given by a number of reputable witnesses establishes to a degree approaching certainty that Mr. Phillips, the president of Feibleman’s, Incorporated, did nothing more than conduct a quiet and orderly inquiry into a reported irregularity connected with the business and affairs of the company. All of plaintiff’s material statements are, in our opinion, directly and conclusively rebutted by an array of witnesses whose credibility has not been attacked except by innuendo. We say this advisedly, because plaintiff dismisses
 
 *29
 
 their testimony pointedly, without comment, upon the theory that all, except one or two of them, are employees of Feibleman’s, Incorporated. We do not consider it necessary to review the testimony in detail. We will only refer to certain portions of it by way of illustration, and will summarize what we conceive to be the established facts. On the question of publication, the plaintiff testified that Mr. Phillips called her, to his office and, in an accusatory manner and loud voice, uttered in the presence and hearing of other persons, asked her the question and made the statement which we have quoted. All other witnesses who testified to this incident say that no one was in Mr. Phillips’ office at that particular time except the plaintiff, Mr. Phillips, and the latter’s stenographer. All of them deny any knowledge of what then transpired. They testified that Mr. Phillips’ office is glass inclosed, and nothing occurred therein, at that time, to attract their attention. The stenographer testified that she was busy; that she was passing in and out of an adjoining office, and was not aware of what was then said or done by either party. An accountant, who was in an adjoining office, engaged in auditing the books of the company, testified to the same effect. Mr. Phillips and the two mentioned witnesses testified that, when plaintiff entered Mr. Phillips’ office, he placed a chair near his desk, asked her to be seated, drew his chair near the plaintiff, and conversed with her in a low, modulated tone, which was not audible to any other person. The stenographer and accountant testified that their attention was first attracted by the plaintiff raising her voice and declaring that “This Is the first time any one of her (my) family has ever been accused of stealing,” and that Mr. Phillips’ reply was, “Listen, Mrs. Gilliland; remember that no one has accused you of stealing anything, and the only time the word ‘steal’ has been mentioned was when you mentioned it.”
 

 The plaintiff testified that she was ashamed of the incident, and that she had not acquainted any one with what had occured in Mr. Phillips’ office. Twelve or fifteen ladjes and gentlemen testified that shortly thereafter plaintiff voluntarily related the occurrences to them, and that previous thereto they had no knowledge of the affair. The plaintiff denied that, after leaving the president’s office, she had told various persons that Mr. Phillips had treated her courteously and considerately. A number of witnesses testify to exactly the reverse of her statement. The testimony as a whole shows that every material fact the plaintiff testified to is rebutted in substantially the same manner. The evidence, as a whole, shows an entire absence of any publication by any one except the plaintiff herself. It shows that Mr. Phillips, in his conduct of the inquiry, was unusually careful as to the avoidance of giving it publicity, and his conduct toward the plaintiff throughout the inquiry was courteous and considerate. Upon this showing we have no hesitancy in setting aside the verdict of the jury and avoiding the judgment rendered herein.
 

 Publication is the essence of slander; and where an alleged slanderous statement has not been communicated to a third person, except by the plaintiff, there is no slander. Newell on Slander and Libel (4th Ed.) 5.
 

 The burden is on the plaintiff to prove that the slander was published and that defendant was responsible for the publication. 37 C. J. p. 72.
 

 Counsel for defendants- have filed an exhaustive brief in which the governing principles in libel and slander suits are considered and have cited a number of authorities supporting those principles. Our findings of fact dispose of this case, and our time is too limited to justify us in making an extended and unnecessary research.
 

 For the reasons assigned the verdict of the jury and the judgment appealed from are
 
 *31
 
 avoided and reversed, and this suit is dismissed at the 'Cost of plaintiff and appellee in both courts.