194 So.2d 456 (1967)
Hewitt R. K. PARSONS
v.
GULF & SOUTH AMERICAN STEAMSHIP COMPANY, Inc.
No. 2401.
Court of Appeal of Louisiana, Fourth Circuit.
January 9, 1967.
Rehearing Denied February 13, 1967.
Writ Refused April 14, 1967.
Donald V. Organ, Evangeline Molero Vavrick, New Orleans, for plaintiff-appellee.
Terriberry, Rault, Carroll, Yancey & Farrell, Benjamin W. Yancey, William E. Wright, G. Edward Merritt, New Orleans, for defendant-appellant.
Before SAMUEL, HALL and BARNETTE, JJ.
BARNETTE, Judge.
This is an appeal from a judgment based on a jury verdict awarding plaintiff damages in the amount of $10,000 for libel.
The plaintiff Hewitt R. K. Parsons, an able-bodied seaman of many years experience, was employed by defendant Gulf & South American Steamship Co., Inc., for a voyage of the SS. "Gulf Shipper," one of defendant's vessels, beginning on May 16, 1961. The voyage in question included ports in the Republic of Chile. On June 7, 1961, while in the port of Antofagasta, Chile, there was a disturbance on board in which plaintiff was involved. The incident gave rise to charges against plaintiff which defendant included among reasons for discharging him when the vessel returned to the Port of New Orleans, July 24, 1961.
On July 23, as the vessel was entering the Port of New Orleans, Mr. Parsons was handed a written notice of dismissal which included the following:
"REASONS FOR DISMISSAL: Antofagasta, Chile. While at Antofagasta, Chile on June 7, 1961 at 1930 hrs., Hewitt K. Parsons, A.B., apparently intoxicated *457 in a violate [sic] mood kicked in and broke screen on starbard [sic] door to main deck passageway refusing to go to his quarters when ordered by Chief Officer, also threatening Second Mate with his fists when handcuffs were brandished to calm him down.
"Handling contrabrand [sic] contrary to government and the company regulations."
He was also given a copy of a separation notice, the original of which was mailed by the employer to the Administrator, Division of Employment Security, Baton Rouge, Louisiana, containing the following:
"REASON FOR SEPARATION. State fully and clearly.
"OFF the SS GULF SHIPPER V-69/70 at New Orleans, La.; Dismissed Insolence to superior officers and deliberate damage to vessel property. Handling contraband which is contrary to government and to company regulations."
The separation notice was given on a printed form prepared by the Division of Employment Security and provided to employers for use in appropriate cases. It contained the following printed instructions:
"FILL OUT IN TRIPLICATE: Mail the Original copy to the Administrator, Division of Employment Security, Baton Rouge 4, Louisiana, within 72 hours after separation. Give the duplicate copy to the worker within 72 hours and retain the triplicate copy for your files."
"FAILURE TO SUBMIT THIS REPORT WITHIN THE SPECIFIED TIME LIMITS MAY FORFEIT YOUR RIGHT TO APPEAL. IT MUST BE SUBMITTED WITHIN 72 HOURS AFTER THE WORKER'S SEPARATION."
The notice of separation was given by defendant in accordance with these instructions.
The plaintiff did not allege, and the record is devoid of any evidence, that defendant published or gave a copy of the "Reasons for Dismissal," which it handed to Parsons personally, to any person other than Parsons. The publication of which plaintiff complains and upon which his claim for recovery is based is limited to the "Separation Notice" given to the Division of Employment Security.
Plaintiff did allege in his petition, on information and belief, that the defendant communicated the information contained in the notice of separation "* * * to numerous other third parties engaged in various aspects of the shipping business * * *" and "* * * committed wide circulation to its express claims * * *." There is no proof whatever in the record to support these allegations. The only evidence that the allegedly libelous statement of reasons for dismissal were ever communicated to any other person was the testimony of Parsons himself, who testified that he reported the matter to his union representative and requested that he take it up with the proper officer of the vessel. He assumed that the union representative did so, but he had no knowledge of the conversations between them. He never inquired further about it. Clearly any publication of the statement made by the plaintiff himself is not actionable. It is essential that the publication be by the defendant. Gilliland v. Feibleman's, Inc., 161 La. 24, 108 So. 112 (1926); Prosser, The Law of Torts, § 94 (2d ed. 1955). Therefore, plaintiff's case must rest entirely on the "Separation Notice" mailed to the Division of Employment Security.
The shipping company's primary defense is the assertion that the statements given in the notice of termination were true. Secondarily, defendant contends that the statement communicated to the Division of Employment Security was privileged and was made in good faith without malice. In the alternative, defendant argues that the damages awarded are excessive and punitive.
*458 When the vessel was docked at Antofagasta, the Chilean customs authorities came aboard and seized a large quantity of contraband articles for which the vessel was fined $5,000. Chief Steward Boyd and Galley Utility Lee were held responsible for contraband found in the steward's storeroom spaces. Plaintiff Parsons was not charged in connection with this incident.
Plaintiff and other seamen were ashore when the customs officers began their search and were summoned to return. When he came aboard there was general excitement, loud talk, and much commotion; and he admitted that he was involved, but only in a spirit of "horseplay." He admitted he kicked a screen door, but claimed that it was only incidental to the "horseplay" and was done without malicious intent. He denied that the door was damaged.
During the commotion and door-kicking incident, Joseph V. Cady, Chief Officer at the time, ordered Mr. Parsons to go to his quarters, which he refused to do. After some argument, Michael A. Scully, Second Mate, was told by Cady to get the handcuffs. Upon returning with the handcuffs, Mr. Parsons is alleged to have made a menacing gesture with his fists. While it is obvious that Mr. Parsons was not happy over the prospect of being handcuffed and taken to his room, we think he probably put his hands out in a mood indicating his great displeasure, but not as if to menace or strike anyone. At this point he calmed down and went to his room with a fellow seaman. The handcuffs were not placed on him.
This, in brief, is the incident giving rise to the charge of "insolence to superior officers and deliberate damage to vessel property." On these two points Mr. Parsons testified as follows:
"Q Mr. Parsons, you have testified that in Antofagasta you and fellow crew members were skylarking and talking loud in the passageways, is that correct?
"A I did.
"Q And that you kicked the door on the vessel?
"A Yes.
"Q And that the chief mate came up and ordered you to your room and you did not go, is that correct?
"A Yes.
"Q And that he ordered you again and you did not go?
"A That's right.
"Q And he ordered you a third time and threatened you with hand cuffs and you did not go?
"A (The witness nods his head affirmatively.)
"BY THE COURT:
Answer the question, he can't hear you.
"A Yes, sir."
The alleged handling of contraband is based on the following factual situation. It is customary on voyages such as the one in question to require all seamen to make a declaration of items subject to customs regulations of the countries to be visited. The ship's officers make a search of the vessel before entering port and after departing to determine if the listed articles are still in possession of, or satisfactorily accounted for by, each seaman. A customs receipt for any article taken ashore is accepted as satisfactory proof that it was not entered unlawfully. This procedure was followed on the voyage in question, and Mr. Parsons declared possession of several articles prior to arrival in Valparaiso, Chile, among which were two transistor radios. The reason for this procedure is that the ship itself can be fined if contraband is found aboard or items are illegally landed.
By stipulation of counsel, it was agreed that the customs laws of the Republic of *459 Chile are applicable to all types of radios, including small transistor radios. Payment of duties on such articles are entered in the Fiscal Treasury through the Treasury Service of the Republic, and a voucher is made in quadruplicate and signed by the officer in charge. A properly certified copy is given to the party bringing in the article. The penalty for entering such articles without complying with these regulations is a fine or imprisonment.
After departing the port of Valparaiso, a search of the vessel revealed that Mr. Parsons did not have in his possession either of the two radios. Since he could produce no customs receipt, it was concluded that they had been unlawfully entered at Valparaiso. Parsons admitted one of them was taken ashore and left in Valparaiso without the payment of duty. He testified as follows:
"Q I mean, would you explain for the Court and the jury what happened to both of these radios?
"A Yes, ma'am. I bought two, small radios, a 6-transistor and a small radio which is aboutwas about that size (indicating). I took the little radio to a little, 11-year-old girl, my chauffeur's little girl, at least the chauffeur we use all the time.
"I took that ashore and I presented it at the Customs House. I said, I told him what I wanted the radio for, I said, "I want to take this little radio to____' I called the man's name, I can't remember now, I called the chauffeur's name and the Customs House Officer said, `This is of no value, you can give it to the little girl,' and he let me go with the radio.
"The other radio was lost over the side. That, Greene would have to explain, I don't know how that was. I lent him the radio and the radio didn't come back to me.
"Q Is it your testimony then, Mr. Parsons, that one of the radios that you loaned to a fellow crew member?
"A Greene; yes, ma'am.
"Q What's Mr. Greene's first name?
"A Leonard Greene.
"Q And the other radio you took ashore?
"A Yes, ma'am."
On cross-examination, Mr. Parsons made the following admissions:
"Q Now, you did also testify that you brought one transistor radio into Valparaiso?
"A Yes.
"Q And you didn't pay duty on that radio?
"A Didn't pay no duty on it."
Counsel for plaintiff has made much of the fact that a large amount of contraband was removed by the Chilean authorities at Antofagasta and that plaintiff was not involved in that incident. She severely criticized the laxity of the ship's officers in making searches and the generally inefficient manner in which the whole matter of contraband was handled. The insinuation is quite pointed that many other members of the ship's crew, including Captain J. S. Lee, were much more guilty than plaintiff, and that Mr. Parsons was discriminated against. The issue is not whether Mr. Parsons was discharged for trivial reasons or without proper cause, nor whether he was discriminated against, nor whether he was entitled to further investigation and formal hearing. Much of counsel's brief in his behalf is devoted to argument of these matters. This argument is irrelevant and serves no purpose except to obscure the real issue. Apparently it was effective before the jury.
The issue is one of libel. The publication of the alleged libelous statement by *460 mailing it to the Division of Employment Security is admitted. The first question to be answered then is whether or not it was true.
We agree with plaintiff's counsel in her statement of the law applicable to actions for libel. Words which impute crime to another (and taking contraband into a foreign country is a criminal act) are libelous per se, and proof of actual malice is not required. Martin v. Markley, 202 La. 291, 11 So.2d 593 (1942); Edwards v. Derrick, 193 La. 331, 190 So. 571 (1939); Cotonio v. Guglielmo, 176 La. 421, 146 So. 11 (1933); Fitzpatrick v. Daily States Pub. Co., 48 La.Ann. 1116, 20 So. 173 (1896); Savoie v. Scanlan, 43 La.Ann. 967, 9 So. 916 (1891). Truth is an absolute defense, but the burden of proving truth is upon the defendant. LSA-R.S. 13:3602; Deshotel v. Thistlethwaite, 240 La. 12, 121 So.2d 222 (1960); Madison v. Bolton, 234 La. 997, 102 So.2d 433 (1958).
The defendant has proven by a clear preponderance of the evidence the truth of the statements made about the plaintiff in the notice of separation mailed to the Division of Employment Security. Mr. Parsons' own admissions quoted above leave no doubt of this. The finding of fact by the jury to the contrary was manifestly erroneous, and the verdict must be set aside.
Having sustained defendant's primary defense, it is not necessary to consider its secondary defense of privilege, nor the quantum of damage.
For these reasons the judgment in favor of plaintiff Hewitt R. K. Parsons against the defendant Gulf & South American Steamship Co., Inc., is reversed, and there is now judgment in favor of defendant Gulf & South American Steamship Co., Inc., against the plaintiff Hewitt R. K. Parsons, rejecting his demands and dismissing his suit at his cost in both courts
Reversed.