589 So.2d 1186 (1991)
Jacqueline MELANCON, Wife of/and Mack Melancon
v.
The HYATT CORPORATION, Greg Besmehn and Elwood Conrad.
No. 91-CA-0356.
Court of Appeal of Louisiana, Fourth Circuit.
November 14, 1991.
Writ Denied January 30, 1992.
*1187 Christopher J. Bruno, Stephen P. Bruno, Bruno & Bruno, New Orleans, for plaintiffs-appellees Jacqueline Melancon and Mack Melancon.
Craig R. Nelson, Christina P. Fay, Hulse, Nelson & Wanek, New Orleans, for defendant-appellant Hyatt Corp.
Before KLEES, BYRNES and PLOTKIN, JJ.
KLEES, Judge.
Defendant, the Hyatt Corporation, appeals the trial court's judgment awarding damages to plaintiffs, Mack Melancon and his wife Jacqueline, for defamation and loss of consortium, respectively. After reviewing the record, we affirm the trial court's judgment in favor of plaintiffs but reduce the amount of damages awarded.
From November of 1983 until February 7, 1987, Mack Melancon was employed as a shift engineer at the Hyatt Regency hotel in New Orleans. Melancon's job was to operate and maintain the boilers, refrigeration units, heating and air conditioning systems in the hotel. He sometimes had to go into the hotel laundry room, which was kept unlocked, to get rags.
*1188 Sometime in November of 1986, the hotel laundry manager, Mr. Dorsky, discovered during a routine inventory that there were some new Regency Club towels missing from the laundry room. He reported this fact to Mr. Conrad, the hotel director of security, who told him to put out more towels and keep a daily count. Mr. Conrad then had a hidden video camera installed in the laundry room. There were towels missing again in December, but the pictures taken by the video camera were inconclusive because the lights had been turned off. Mr. Conrad then had the laundry room lights wired to remain on at all times.
On January 7th, more towels were reported missing. Mr. Conrad checked hotel records and determined that Mack Melancon and Joseph Celestine had been on duty in the Engineering Department from midnight until 8:00 a.m. on January 7th. Mr. Conrad then viewed the videotape, which showed someone enter the laundry room at about 3:46 a.m., climb up on a cart, reach into a box of Regency Club towels on a high shelf, and then walk out. From the tape, Mr. Conrad determined that the person who did this was Mack Melancon.
Mr. Conrad then showed the tape to Mr. Dorsky and Mr. Besmehn, the employee representative in the Personnel Department, without telling them who he believed was on the tape. Mr. Dorsky and Mr. Besmehn each independently recognized Mack Melancon. Finally, the tape was shown to Mr. Gros, a security supervisor, who could not identify the person and said it did not look like Mack Melancon.
Mr. Besmehn discussed the problem with other supervisors in the Personnel Department and with the director of the Engineering Department. The general reaction was one of surprise because Mr. Melancon had always been a good employee.
On February 6, 1987, Mr. Besmehn called Mack Melancon and told him that he was suspected of misappropriating towels based on the videotape. Mr. Melancon denied any involvement in the incident and denied that he was the person shown on the tape. Mr. Melancon was asked to resign; he refused, and was sent home for the day and told not to say anything to anyone. The next day when Melancon came into work, a fellow employee named Charlotte Guidry told him that she had heard "what happened to him." He then went to Personnel, and was fired for stealing towels. He asked to see the videotape, but was denied permission.
Mr. Melancon testified that when he went to clean out his locker, his fellow employees didn't speak to him, and he felt that they all knew the reason he was discharged. Larry Washington, a former employee in the Maintenance Department of the Hyatt, testified at trial that he was told by Betty Mullens, a cafeteria employee, that Mack Melancon was fired for stealing towels. Richard Johnson, another former Hyatt employee, stated that he was told the same thing by fellow employees Vic Sperling, West Young, Victor Artist, and "a lot of guys" sitting at the table during a break time at the Hyatt.
Mack Melancon applied for unemployment compensation and collected $220 per week for six months. In August of 1987, he was hired as an engineer at Xavier University, where he had been employed prior to working at the Hyatt. He testified that he knew the assistant chief at Xavier, and therefore was able to explain his termination by the Hyatt. When he was terminated by the Hyatt, Mr. Melancon was earning $11.32 per hour with benefits including medical and dental insurance; he was hired at Xavier in 1987 at $8.40 per hour without benefits. His wages at Xavier were gradually raised to $9.44 per hour. He eventually left Xavier to work at Veterans Administration Hospital earning $10.56 per hour.
On June 4, 1987, Mack Melancon filed suit against the Hyatt Corporation and its employees Greg Besmehn and Elwood Conrad, alleging defamation and wrongful discharge from his employment. The petition was later amended to add a claim by Mrs. Melancon for loss of consortium. On June 17, 1988, the district court granted defendants' motion to strike the wrongful discharge claim from the petition.
*1189 The defamation and loss of consortium claims were tried before a jury in June 1990. At the conclusion of the trial, the trial judge granted defendants' motion to dismiss Mr. Besmehn and Mr. Conrad from any personal liability in the lawsuit. On June 18, 1990 the jury rendered its verdict that the Hyatt had defamed Mack Melancon, awarding $176,000 in damages to Mr. Melancon plus $25,000 to Mrs. Melancon for loss of consortium. On June 25, 1990, judgment was entered in accordance with the jury's verdict. The trial judge denied the Hyatt's motion for a new trial or alternatively, for a remittitur, and this appeal followed.
Defendant has alleged five specifications of error to be considered on appeal.
Defendant first argues that the jury was clearly wrong in finding that plaintiffs had proved the necessary elements to establish defamation. The elements of defamation are: (1) Defamatory words; (2) Publication; (3) Falsity; (4) Malice, actual or implied; and (5) Resulting injury. Madison v. Bolton, 234 La. 997, 102 So.2d 433 (1958). Words that impute to an individual the commission of a crime are defamatory per se; malice and falsity are presumed and the burden shifts to the defendant to rebut the presumption. Madison, supra; Clements v. Ryan, 382 So.2d 279 (La.App. 4th Cir.1980).
In the instant case, because plaintiff Melancon was accused of stealing, he did not need to prove defamatory words, malice or falsity. Defendant's primary argument on this assignment of error is that plaintiffs failed to prove the second element of defamation, which is publication. Publication is communication of the defamatory statement to someone other than the party defamed. Madison v. Bolton, supra; Trahan v. Ritterman, 368 So.2d 181 (La.App. 1st Cir.1979). Defendant contends that the jury's finding is manifestly erroneous because plaintiff's only evidence of publication, besides his own testimony, was the testimony of two former Hyatt employees, Mr. Washington and Mr. Johnson, who stated that certain other Hyatt employees had communicated to them the reason for Melancon's firing. Defendant stresses that plaintiffs did not call as witnesses the employees who allegedly communicated this information. Defendant called Mr. Besmehn and Mr. Conrad, who both testified that they did not discuss the incident with any Hyatt employee who was not directly involved in the investigation of Mr. Melancon. Defendant did not, however, call the employees named by Mr. Washington and Mr. Johnson to refute their testimony.
The jury heard all the witnesses, observed their demeanor, and chose to believe plaintiff's witnesses over defendant's in this regard. Although the evidence of publication was circumstantial, it was not unreasonable for the jury to believe that the Hyatt management had communicated the information about Melancon's firing. The determination of the jury was not manifestly erroneous.
On this same assignment of error, defendant also argues that the jury erred in failing to find that the communication made was privileged. To be privileged, an otherwise defamatory statement must be "made in good faith on any subject matter in which the person communicating has an interest or in reference to which he has a duty, to a person having a corresponding interest or duty." Toomer v. Breaux, 146 So.2d 723 (La.App. 3d Cir.1962). In this context, "good faith" means having reasonable grounds for believing that the statement is true. Ward v. Sears, Roebuck & Co., 339 So.2d 1255, 1261 (La.App. 1st Cir. 1976). This qualified conditional privilege is an affirmative defense which must be proved by defendant. Trahan v. Ritterman, supra; Corcoran v. New Orleans Fire Fighters Association, 379 So.2d 829 (La.App. 4th Cir.1980).
Defendant strenuously argues that the evidence shows that Mr. Conrad and Mr. Besmehn acted in good faith and communicated their beliefs only to those Hyatt personnel who needed to know. The jury apparently did not believe them, because jury interrogatory # 3, which asked whether defendant had established that the communication was privileged, was answered in the *1190 negative. With regard to the element of good faith, the jury, which observed Mr. Melancon and also viewed twice the videotape on the basis of which he was fired, could have justifiably concluded that the tape did not constitute reasonable grounds for the belief by Mr. Conrad and Mr. Besmehn that Mr. Melancon had misappropriated Hyatt property. If the jury determined that the belief of the Hyatt management was not reasonable, good faith would be negated. We cannot say that the jury's conclusion in this regard is clearly wrong.
Also concerning the issue of privilege, defendant argues that a communication about the reason for an employee's termination is privileged if made by the employer to any of his other employees, because all have an interest in knowing. Defendant relies on Rouly v. Enserch Corporation, 835 F.2d 1127 (5th Cir.1988), a federal case interpreting Louisiana law. As there are no Louisiana decisions extending the qualified privilege this far, we decline to interpret the privilege so broadly.
Defendant's second assignment of error is that the trial court gave improper instructions to the jury and also presented improper interrogatories to the jury. With regard to jury instructions, defendant's primary contention is that the trial court committed reversible error by instructing the jury that plaintiffs had to prove their case by a preponderance of the evidence. Defendant argues that the proper burden of proof in a defamation case is "more than a preponderance of the evidence," citing Ward v. Sears, Roebuck & Company, supra; Clements v. Ryan, 382 So.2d 279 (La.App. 4th Cir.1980); and other cases. While we recognize that this line of cases exists, this court has recently stated:
[1] In a suit for defamation the plaintiff must prove by a preponderance of the evidence the following elements: defamatory words; publication; falsity; malice, actual or implied; and resulting injury. Cangelosi v. Schwegmann Brothers Giant Super Markets, 390 So.2d 196 (La.1980); O'Dell v. Deich, 496 So.2d 1074 (La.App. 4th Cir.1986).
Davis v. Southern Savings Association, 557 So.2d 1011 (La.App. 4th Cir.1990). In view of the existence of these two separate lines of cases, we do not find that the jury instruction was erroneous.
Defendant also argues that the jury instruction on conditional privilege was clearly wrong because the trial judge used an explanation of privilege that differed slightly from defendant's proffered explanation taken from Toomer v. Breaux, supra. However, we do not find that the definition of privilege requested by defendant is sufficiently different from the instruction given by the trial judge so as to constitute reversible error.
Defendant also complains that it was error for the trial judge to instruct the jury that defendant had to prove the truth of the statement communicated about Mr. Melancon. Defendant correctly asserts that the Hyatt did not have to prove that the statement was true in order for it to be privileged, but only that the Hyatt management held a reasonable belief that it was true. In examining the jury instructions, we find that the court correctly instructed the jury as to the conditional privilege, but also gave a separate instruction that truth is an absolute defense to a defamation claim. In this context, if the Hyatt proved the statement to be true, it would defeat plaintiff's claim. We find that the two instructions were sufficiently separated in time so as not to be confusing to the jury.
Finally, by this same assignment of error, defendant contends that the first jury interrogatory asking whether the jury found, based on the evidence, that Mack Melancon stole the towels, was improper because it implied that the Hyatt had to prove truth. We find no merit in this contention. The jury interrogatory was proper in light of the fact that truth is an absolute defense to defamation. There is no question that the Hyatt tried to prove that the statement was true, as well as that it was privileged. The jury was also asked, in another interrogatory, whether it found the communication to be privileged. There is no error in the jury interrogatories.
*1191 Defendant's third assignment of error is that the trial judge failed to exclude the testimony of Larry Washington and Richard Johnson as hearsay. Mr. Johnson and Mr. Washington are former employees of the Hyatt who testified that certain other employees communicated to them that Mack Melancon had been fired for stealing towels.
This assignment of error has no merit. Hearsay is testimony in court of a statement made out of court, which statement is being offered to show the truth of the matters asserted therein. Buckbee v. United Gas Pipeline Company, 561 So.2d 76 (La.1990). In the instant case, the testimony of Washington and Johnson was not offered to prove the truth of the statement made to them; i.e., that Melancon had stolen towels, but rather was offered to prove publication of that statement. If an out-of-court statement is offered merely to prove that the statement was made, it is not hearsay. See Buckbee, supra. Therefore, the testimony complained of was not hearsay, and the trial judge's ruling was correct.
Defendant's fourth specification of error is that improper conduct of the trial judge towards defense counsel prejudiced defendant in front of the jury. After reviewing the record, we do not find that the trial judge's actions were prejudicial. The trial judge reprimanded defense counsel several times, but was careful to do so when the jury was not present. The other "improper conduct" complained of by defendant consists of evidentiary rulings the trial judge made that went against defendant.
The trial court is vested with broad powers to control and regulate the course of a trial. Murray v. Murray, 521 So.2d 754 (La.App. 2d Cir.1988). We do not find that the trial judge abused his power in this case or that his actions prejudiced defendant.
Defendant's final specification of error is that the damages awarded by the jury were excessive. The jury awarded Mr. Melancon $87,000 in lost wages; $45,000 for mental pain and suffering; $22,500 for embarrasment and humiliation; and $22,500 for loss of reputation. It also awarded Mrs. Melancon $25,000 loss of consortium. The total award to plaintiffs was $201,000.
A jury's award of damages cannot be reversed or modified absent a showing that the jury abused its much discretion. Only after the appellate court determines from a review of the entire record that the "jury abused its much discretion can an Appellate Court disturb the award, and then, only to the extent of lowering it (or raising it) to the highest (or lowest) point which is reasonably within the discretion afforded that Court." Coco v. Winston Industries, Inc., 341 So.2d 332 (La.1976); Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971).
In the instant case, we do not find that the jury abused its discretion in awarding $87,000 in lost wages, as there was an economist who gave expert testimony to support this figure. Although the estimate of lost wages made by defendant's expert was substantially lower, we do not find it error for the jury to choose to believe plaintiff's expert. See Goins v. Department of Police, 570 So.2d 93 (La.App. 4th Cir.1990), in which we held that where there is a conflict in testimony or two permissible views of evidence, the fact finder's choice between them cannot be found "clearly wrong".
With regard to the other elements of damage, however, we do find the jury's award to be so high that it constitutes an abuse of discretion. There was no testimony with regard to the plaintiff's loss of reputation in the community. Plaintiff testified that he felt as if all the Hyatt employees believed that he had stolen property, and that he was depressed. However, plaintiff did not seek medical help for depression. Plaintiff's wife testified that during the time he was unemployed, they argued constantly and did not sleep together. She stated, however, at the time of trial, that they were trying to get their marriage back on track.
Neither plaintiff nor defendant has cited a case in Louisiana in which the court has *1192 awarded more than $10,000 in general damages for defamation. After reviewing the evidence, we are convinced that plaintiff's injury is less severe than even those cases cited to us. Therefore, we find that the highest amount the jury could have reasonably awarded for pain and suffering, embarrassment and humiliation, and loss of reputation, combined, to be $10,000.
Moreover, we also find the $25,000 awarded to Mrs. Melancon for loss of consortium to be an abuse of discretion. Mrs. Melancon's marital relationship and home life were disrupted for approximately six months, while her husband was depressed and out of work. However, she testified that the situation had improved by the time of trial. Again, the award is out of line with prior jurisprudence. Under the circumstances, we find $5,000 to be the highest amount the jury could have reasonably awarded for loss of consortium.
Accordingly, for the reasons given, we amend the judgment of the trial court to award plaintiffs a total of $102,000, which includes $87,000 in lost wages and $10,000 in general damages to Mack Melancon, and $5,000 loss of consortium to Jacqueline Melancon. In all other respects, the judgment of the trial court is affirmed.
AMENDED AND AFFIRMED.