Lisa S. DAIGLE

v.

COMPUTRAC, a wholly-owned subsidiary of Telerate Systems, Inc., a division of Dow Jones Company, Inc.

Civ. A. No. 93–0189.

United States District Court, E.D. Louisiana.

Oct. 20, 1993.

Leonard Alvin Washofsky, Leonard A. Washofsky, PLC, Metairie, LA, for plaintiff.

Jack M. Weiss, Mark Benjamin Holton, Stone, Pigman, Walther, Wittmann & Hutchinson, New Orleans, LA, for defendant.

## ORDER AND REASONS

FELDMAN, District Judge.

Before the Court is defendant's motion for summary judgment against plaintiff's claim for defamation and intentional infliction of emotional distress. For the reasons that follow, the motion is GRANTED.

### Background

This is a diversity-based suit for defamation and intentional infliction of emotional distress. The defendant, CompuTrac [1], first hired the plaintiff, Lisa S. Daigle, in February of 1988 to work as a sales representative at its main office in New Orleans, Louisiana.

Less than three years later, the defendant's President, Timothy Slater, informed the plaintiff that she was going to be promoted to Marketing Manager.[2]

On December 5, 1991, the day after she learned of her promotion to Marketing Manager, Ms. Daigle, who is white, was involved in an incident [3] with a co-worker, Kathleen Maston, who is black.[4] Ms. Maston resigned after the incident. The plaintiff, however, was permitted to return to work. After she returned to work, Ms. Daigle was told by Mr. Slater that she would report only to him; that she was not to speak with anyone in the office; she should not provoke anyone, and should not even have eye contact with anyone. Their relationship was obviously not the best.

At some point after the December incident, a Ms. Schenkel, an Employee Relations Manager with Dow Jones Company, discussed the incident by telephone with other CompuTrac employees. The record does not suggest that any defamatory comments were made. Thereafter, Dow Jones sent David Sears, Director of Employee Relations, to investigate what happened between Ms. Daigle and Ms. Maston. Based on his investigation, Mr. Sears concluded that the plaintiff had provoked the incident. She was immediately fired.[5]

Ms. Daigle then applied for unemployment benefits. Some time after applying for unemployment benefits, Ms. Daigle says that she received a phone call from a woman, whom she knows only as Debbie, from the

---

1. CompuTrac is a wholly-owned subsidiary of Telerate Systems, Inc., a division of Dow Jones Company.

2. The parties dispute whether Ms. Daigle actually became the Marketing Manager. The plaintiff claims that she was promoted to Marketing Manager in the fall of 1991. She points out that her salary, which was equal to a Marketing Manager's salary, is evidence of her promotion. In contrast, the defendant observes that the plaintiff could not move into the Marketing Manager's position until the departing Marketing Manager had vacated the position for his new job in Asia. This factual dispute is not however, one that precludes summary judgment.

3. Despite plaintiff's insistence that the incident was not an altercation, the characterization of what happened between the plaintiff and Ms.

Maston is irrelevant in the present summary judgment environment.

4. The parties dispute what provoked the incident, and who was at fault. Again, this is a factual dispute that does not block summary judgment on the present issues.

5. According to Ms. Daigle, Mr. Sears at first refused to tell her why she was being terminated, stating that he was not required to give her a reason because she was an at will employee. After being pressed for a reason, however, he told her that she was being fired for using racial slurs, profanity and for fighting with Ms. Maston. Ms. Daigle also claims that Mr. Sears then told her that "we don't want your kind around here."

state Office of Employment Security. According to the plaintiff, Debbie said that she had spoken to Mr. Slater, and that Mr. Slater had told her that Ms. Daigle was not entitled to unemployment benefits because Ms. Daigle had been fired for using racial slurs, profanity and for fighting. The plaintiff told Debbie that Mr. Slater's version of the Maston incident was not accurate.

Mr. Slater asserts that he does not remember speaking with Debbie or anyone else at the unemployment office, but admits that he may have talked to someone (the OES file reflects only one communication with an employee or representative of CompuTrac). On February 3, 1992 Ms. Schenkel completed a state form (LDET–ES 110.D), as required by law, and returned it by mail to the OES. In response to the question, "Reason for separation from Your Employ," Ms. Schenkel wrote: "Altercation with another employee caused by verbal abuse by claimant towards the other employee." Nevertheless, the OES awarded full unemployment benefits to Ms. Daigle. She immediately began to receive her unemployment benefits, which continued until April 1993.

Animated by who was right, Ms. Daigle or Ms. Maston, plaintiff sued CompuTrac over what happened.

Ms. Daigle alleges in her complaint that she has "applied for over 200 positions, and she has contacted numerous potential employers in the securities field, as well as many other fields in which she had education, experience, and expertise." Additionally, she alleges that CompuTrac defamed her and caused her mental distress because it "published abroad … to prospective employers to whom plaintiff applied for employment after her termination" false and defamatory information concerning termination.

Ms. Daigle identifies only two allegedly defamatory communications. First, the alleged communication by Mr. Slater to the OES. Second, an alleged telephone conversation in which Ms. Daigle herself, posing as a prospective employer, claims she spoke with an employee, unnamed, of the Dow Jones Human Relations Department. According to Ms. Daigle, the unidentified employee stated that Ms. Daigle had been a sales representative with CompuTrac, not the Marketing Manager (the position to which Ms. Daigle was informed of her promotion the day before the Maston events). It is useful to underscore, however, that nothing was said of the Maston incident.

Ms. Daigle also offers a series of anecdotes describing encounters with prospective employers. But at no time does she point to a specific communication made by any of the defendant's people to any of these prospective employers. She only speculates about such communications. One telling example, is Ms. Daigle's account of her interview with a Boca Raton software company, System Writer, in February 1992. Ms. Daigle states that System Writer seemed interested in her at first, and then she makes what is at best a leap of faith: that Mr. Cruz of System Writer knew Tim Slater and "they probably communicated to one another about me as a potential employee." When pressed on this point, however, Ms. Daigle is unable to provide any specific evidentiary-directed information to establish or even infer that Mr. Slater and Mr. Cruz ever had such a discussion.

## I.

CompuTrac correctly argues that summary judgment is appropriate here because Ms. Daigle cannot prove that CompuTrac disseminated any defamatory information about Ms. Daigle and, therefore, she has no claim for relief. The defendant maintains that its communication to the OES was required by law and was made in good faith. CompuTrac thus concludes that under Louisiana law this information was a privileged communication that may not serve as a basis for plaintiff's claims. The defendant emphasizes that plaintiff cannot prove on the record before the Court that the defendant disseminated this information to her prospective employers. Evidence of such dissemination, defendant asserts, is wholly speculative and insufficient to constitute a genuine issue of material fact under the established summary judgment standards that must direct this Court. Finally, CompuTrac attacks Ms. Daigle's attempt to invoke the doctrine of "compelled defamation," claiming, first, that Loui-

siana courts have yet to adopt such a theory and, second, that even if Louisiana were to adopt such a theory, plaintiff still could not recover under it.

Plaintiff admits that her defamation claim cannot be based on defendant's communications with the unemployment office under Louisiana defamation law. Ms. Daigle invokes *Melancon v. Hyatt Corp.*, 589 So.2d 1186 (La.App. 4 Cir.1991), *writ denied*, 592 So.2d 411 (1992), however, for the argument that circumstantial evidence supports her claim that CompuTrac made defamatory statements about her to prospective employers. Ms. Daigle further argues that CompuTrac should also be held liable for the defamatory statements that she herself was allegedly compelled to disclose on her employment application with Miles, Inc. (thus invoking the "compelled defamation" doctrine). *See Lewis v. Equitable Assurance Soc. of the U.S.*, 389 N.W.2d 876, 886 (Minn. 1986); *Weldy v. Piedmont Airlines*, 1989 WL 158342 (W.D.N.Y., Dec. 22, 1989). Finally, Ms. Daigle argues, unsuccessfully, that material facts are at issue that preclude summary judgment.

## II.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No genuine issue of fact exists if the record, taken as a whole could not lead a rational trier of fact to find for the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1355, 89 L.Ed.2d 538 (1986). A genuine issue of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

■ The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. *See id.* Therefore, "[i]f the evidence is merely colorable, or is not significantly probative," summary judgment is appropriate. *Id.* at 249–50, 106 S.Ct. at 2510–11 (citations omitted). Summary judgment is proper if the party opposing the motion fails to establish an essential element of his case. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). In evaluating the summary judgment motion, the court must read the facts in the light most favorable to the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. at 2513.

## III.

■ Because this Court's jurisdiction is based on diversity of citizenship, Louisiana law governs plaintiff's defamation claim. As is well-known, a plaintiff in Louisiana must prove five things to establish a claim for defamation [6]: (1) defamatory words; (2) publication; (3) falsity; (4) malice, actual or implied; and (5) resulting injury. *Brannan v. Wyeth Laboratories, Inc.*, 526 So.2d 1101 (La.1988); *Lemeshewsky v. Dumaine*, 464 So.2d 973 (La.App. 4 Cir.1985); *Russo v. Conde Nast Publications*, 806 F.Supp. 603 (E.D.La.1992). This motion rightly focuses the Court's attention to the publication requirement and the state of the record on that important issue.

■ CompuTrac argues that summary judgment is appropriate because Ms. Daigle cannot prove publication, which quite simply "is communication of the defamatory statement to someone other than the defamatory party." *Melancon v. Hyatt Corp.*, 589 So.2d 1186, 1189 (La.App. 4 Cir.1991) (citation omitted). Louisiana courts have inferred publication based on circumstantial evidence. *Id.* (Although the evidence of publication was circumstantial, it was not unreasonable for the jury to believe that Hyatt management had communicated the information about Melancon's firing). Louisiana courts, however, have not found publication if only the plaintiff, and not the defendant, communicated the offending statement to a third party. *See, e.g., Gilliland v. Feibleman's,*

---

**6.** Plaintiff's claim for intentional infliction of emotional distress is anchored to the same facts that inform her claim for defamation.

*Inc.*, 161 La. 24, 108 So. 112, 114 (1926) (Publication is the essence of slander; and where alleged slanderous statement has not been communicated to a third person, except by the plaintiff, there is no slander); *Hoover v. Livingston Bank*, 451 So.2d 3, 4 (La.App. 1 Cir.1984) (no publication when plaintiff herself told prospective employer about incident that led to termination by prior employer); *Cashio v. Holt*, 425 So.2d 820, 822 (La.App. 5 Cir.1983) (fired employee's dissemination of termination letter not publication), *writ denied*, 430 So.2d 94 (1983); *Parsons v. Gulf & South American Steamship Co., Inc.*, 194 So.2d 456, 457 (La.App. 4 Cir.) ("Clearly, any publication of the statement made by the plaintiff himself is not actionable. It is essential that the publication be by the defendant," *citing Gilliland*, *supra* ), *writ denied*, 197 So.2d 80 (La.), *cert. denied*, 389 U.S. 896, 88 S.Ct. 215, 19 L.Ed.2d 213 (1967).

█ In her opposition to this motion, Ms. Daigle properly concedes that the defendant's communications to the OES were privileged and may not be used by her to establish publication. Accordingly, the Court considers plaintiff's other evidence to determine if proof of publication exists on this record.

### A.

In *Melancon v. Hyatt Corp.*, 589 So.2d 1186 (4 Cir.1991), the Court held that a plaintiff may establish publication by circumstantial evidence. *Id.* at 1189. Mack Melancon sued his former employer, Hyatt Corp., for defamation. To infer publication, the plaintiff presented the testimony of two former employees of the defendant, both of whom testified that certain other employees of defendant had communicated to them the reasons for the plaintiff's firing. *Id.* Although the other employees did not testify, the court held that such circumstantial evidence was. enough to establish publication. *Id.* Neither side called the other employees to confirm or refute the evidence of the two former employees who did testify. *Melancon* is of no precedential value to this case.

█ Here, in contrast, plaintiff offers no evidence whatsoever of defamatory communications made by the defendant to Ms. Dai-

gle's prospective employers. Plaintiff's only evidence of publication is her alleged telephone conversation with an unnamed Dow Jones employee (in which the Maston incident was not even mentioned), and the fact that she unsuccessfully applied for many many jobs.

Ms. Daigle claims only that the Dow Jones employee did not accurately describe her final job position with CompuTrac as Marketing Manager. This evidence falls far short, hopelessly short, of the evidence presented in *Melancon.* The comment by the still unidentified Dow Jones employee has nothing to do with why Ms. Daigle was fired. Moreover, as circumstantial proof of publication to prospective employers, the conversation cannot even be characterized as speculative evidence, particularly given the absence of a single example or inference of publication to prospective employers. Finally, even if Ms. Daigle's story were true, her own version of that conversation involved no disclosure of the reasons for her termination. Similarly, Ms. Daigle may not avoid summary judgment by simply arguing that she unsuccessfully applied for two hundred jobs. The mere argued existence of a factual dispute does not defeat a properly supported motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986).

### B.

In light of the above, the Court must next address Ms. Daigle's argument that the doctrine of compelled defamation applies, or should be applied, to this case.

█ Ms. Daigle argues that CompuTrac should be held liable for defamatory statements that she herself was compelled to disclose on her application for employment with Miles, Inc. Reading the tea leaves of Louisiana case literature, however, leads this Court to conclude that Louisiana courts would likely not adopt this controversial and attenuated theory of delictual conduct. Nor should they. It would pervert the essential evil of publication that the law seems to condemn.

Louisiana courts, while not expressly considering this doctrine, have rejected related

arguments in the past. *See Gilliland v. Feibleman's, Inc.,* 161 La. 24, 108 So. 112, 114 (1926) ("Publication is the essence of slander; and where alleged slanderous statement has not been communicated to a third person, except by the plaintiff, there is no slander"); *Hoover v. Livingston Bank,* 451 So.2d 3, 4 (La.App. 1 Cir.1984) (no publication when plaintiff herself told prospective employer about incident that led to termination by prior employer); *Cashio v. Holt,* 425 So.2d 820, 822 (La.App. 5 Cir.1983) (fired employee's dissemination of termination letter not a publication); *Parsons v. Gulf & South American Steamship Co., Inc.,* 194 So.2d 456, 457 (La.App. 4 Cir.1967) ("Clearly, any publication of the statement made by the plaintiff himself is not actionable. It is essential that the publication be by the defendant," *citing Gilliland, supra* ). Louisiana courts appear to have implicitly rejected the doctrine of compelled defamation as a theory of recovery.

Moreover, without a clear indication from the state courts, this Court is unwilling to unilaterally adopt a theory that departs so significantly from the orthodoxy of more settled defamation law. *See, e.g., Mendoza v. SSC & B Lintas, New York,* 799 F.Supp. 1502, 1511 (S.D.N.Y.1992) (inappropriate to decide whether a cause of action for self-libel exists under New York law in the absence of any indication by New York's courts on this matter); *Burger v. Health Ins. Plan,* 684 F.Supp. 46, 52 (S.D.N.Y.1988) ("A federal court should not decide, in the first instance, this important matter of state public policy"); *J. Crew Group, Inc. v. Griffin,* 1990 WL 193918, *4 1990 U.S.Dist. LEXIS 15835, *12 (S.D.N.Y.1990) (court reluctant to adopt theory absent clear New York law, but facts did not support claim in any event).

Even if the Court were to adopt the doctrine of compelled defamation, Ms. Daigle would not be entitled to relief. Under the doctrine of compelled defamation, a plaintiff must prove (1) a compulsion to republish and (2) the foreseeability of the compulsion to the originator of the defamatory statement. *Weldy, supra,* at *4. Ms. Daigle claims that she felt compelled to disclose the facts surrounding her termination on the Miles, Inc. application. However, she presents no evidence that CompuTrac did foresee or should have foreseen that she would be compelled to disclose the details of her termination. Such compulsion would be understandable if the defendant openly offered such information to prospective employers. The record is to the contrary, as indicated by plaintiff's own evidence concerning her conversation with the unidentified Dow Jones employee. Accordingly, plaintiff's claim for compelled defamation is rejected.

Summary judgment is proper in this case because the plaintiff has failed on this record to establish that she can prove publication, an essential element of her case. *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

Accordingly, defendant's motion for summary judgment is GRANTED.