# STATE OF LOUISIANA
# COURT OF APPEAL, THIRD CIRCUIT

## 21-13

**TERRY JOHNSON**

**VERSUS**

**CABOT CORPORATION**

**\*\*\*\*\*\*\*\*\*\***
ON WRIT OF CERTIORARI FROM THE
SIXTEENTH JUDICIAL DISTRICT COURT
PARISH OF IBERIA, NO. 132255, DIVISION "F"
HONORABLE GREGORY P. AUCOIN, DISTRICT JUDGE

**\*\*\*\*\*\*\*\*\*\***
**JONATHAN W. PERRY**
**JUDGE**

**\*\*\*\*\*\*\*\*\*\***

Court composed of Elizabeth A. Pickett, Shannon J. Gremillion, and Jonathan W. Perry, Judges.

**WRIT GRANTED AND MADE PEREMPTORY.**

**Charles H. Hollis**
**Allison A. Fish**
**The Kullman Firm**
**1100 Poydras Street, Suite 1600**
**New Orleans, LA 70163**
**(504) 524-4162**
**COUNSEL FOR RELATOR:**
    **Cabot Corporation**

**G. Karl Bernard**
**Eric L. Register**
**Karl Bernard Law, LLC**
**1615 Poydras Street, Suite 101**
**New Orleans, LA 70112**
**(504) 412-9953**
**COUNSEL FOR RESPONDENT:**
    **Terry Johnson**

**PERRY, Judge.**

This case involves a claim for defamation[1] brought by Terry Johnson ("Johnson") against his employer, Cabot Corporation ("Cabot"). Cabot seeks a supervisory writ of certiorari from the trial court's judgment which denied its motion for summary judgment. For the following reasons, we hereby grant the writ application, reverse the ruling of the trial court, and enter a summary judgment in favor of Cabot dismissing the claims of Johnson, with prejudice.

## FACTS AND PROCEDURE

This defamation action has its origin in an incident that occurred on June 8, 2017, at Cabot's warehouse where Johnson works as a warehouse technician. On that day, Johnson, an African American male, claimed that he cautioned Lloyd Concier ("Concier"), a Caucasian male, as he began to unload an Action Box truck containing oversized cardboard stacked on undersized pallets. Johnson cautioned Concier because he believed Concier's actions were not only unsafe but were contrary to instructions they had been given at an earlier shift meeting. Johnson claims that Concier jumped off the forklift and started rushing at him while yelling in an aggressive manner. Johnson admits in his affidavit filed in opposition to Cabot's motion for summary judgment that he and Concier were yelling at each other, that they were not scared, and that he told Concier that they could settle the matter offsite.

Johnson further claimed that Angela Samanie ("Samanie"), his supervisor, jumped between the two men to keep them apart. Samanie later testified in her deposition that she instructed Concier to unload the truck after confirming with him

---

[1] Originally Johnson's petition also included a claim for employment discrimination. After Cabot filed a peremptory exception of no cause of action seeking dismissal of Johnson's employment discrimination claim for failure to allege discriminatory action against Johnson, Johnson voluntarily dismissed his employment discrimination claim.

that he felt comfortable doing so. According to Johnson, two other co-workers, Linda Smith ("Smith") and Ken Naquin ("Naquin") witnessed the incident.

On June 9, 2017, Johnson reported the incident at a daily safety meeting when his co-workers were present. Also in attendance at the safety meeting were Hugh Junca ("Junca"), another supervisor, and Linda Peloquin ("Peloquin"), the warehouse human resources manager.

Junca investigated the incident. This investigation resulted in the issuance of a "Documented Verbal Warning" ("the letter") to Johnson in which he found that Johnson's conduct in the incident violated Cabot's workplace policies. Junca read the letter to Johnson privately in the presence of Peloquin and Brian Mitchell, Johnson's union representative. The letter states, in pertinent part:

> During the course of the investigation, witnesses stated that you were yelling at both Lloyd and the Action Box driver who delivered the cardboard. This was due to the fact that you wanted the cardboard to be returned. You admitted and it was witnessed that you challenged Lloyd to take the argument outside, and said ". . . do you think you are scaring somebody boy?" Your behavior in this instance does not represent the behavior we expect of a Cabot employee. It goes against our Code of Business Ethics and Values. Under the section titled "Responsibility to Each Other" and "Freedom From Harassment and Workplace Violence":
>
> *As a Cabot employee you are entitled to work in an environment that is free from intimidation, harassment and violence. Verbal or physical conduct by an employee that threatens or harasses another or disrupts another's work performance or creates an intimidating or offensive work environment will not be tolerated. You are encouraged to speak up when a co-worker's conduct or the conduct of an employee of another company makes you or others uncomfortable.*
>
> You have been trained on this standard.
>
> *Corrective Action:*
>
> As a result of your behavior you are receiving this documented verbal discipline and will be placed in your personnel file. Any further violations of company standards, policies or procedures will result in progressive discipline up to and including termination of employment.

2

On May 25, 2018, Johnson, a thirty-year employee of Cabot, who remains employed as a warehouse technician, filed a defamation suit against Cabot. In an amending petition, Johnson alleged that Junca's investigation of the incident failed to consider the statements of Smith and Naquin, both of whom allegedly witnessed the incident and identified Concier as the aggressor. In addition, Johnson further alleged that Cabot "through its agents and/or representatives, verbally stated, and wrote and published, in a Letter of Reprimand, that Johnson was a threat to its ability to maintain a work environment free from intimidation, harassment and violence."

On June 10, 2020, Cabot filed a motion for summary judgment seeking dismissal of Johnson's defamation claim. Johnson submitted an opposition to Cabot's motion. After hearing oral argument and taking the matter under advisement, the trial court issued written reasons which state, in pertinent part:

> Although Mr. Johnson cannot show defamatory words are contained in the verbal warning, he claims, instead, the words have defamatory meaning. Mr. Johnson admitted he has no evidence the documented warning was shared with anyone other that the individuals present in the meeting where it was presented. To prove publication, plaintiff must show that the warning was shown to Tim Hebert[, a co-worker]. He admitted in his deposition that he does not know what Tim Hebert was told.
>
> . . .
> The letter of reprimand contains statements that are inaccurate. As a result of the letter of reprimand, Johnson believes his reputation has been damaged; that he is considered a threat to co-workers; and that co-workers who know about the letter can use the information to threaten him or his job. Although Mr. Johnson admits he did what the warning says he did, he must prove the write-up itself was false. Submitted in connection with the summary judgment are the statements of various co-workers which appear to disagree with the stated conclusion in the write-up  There is no evidence that the statements were considered or disregarded in the investigation.
>
> The Court finds that factual determinations are necessary as to whether the reprimand contains words that have defamatory meaning; if the reprimand contains falsity, if any, and malice, if any, by Cabot or its employees conducting the investigation; and any injury to Terry

3

Johnson. These factual determinations are such that reasonable persons could disagree. The Court finds that summary judgment is not appropriate.

On November 20, 2020, the trial court signed a judgment denying the motion for summary judgment.[2]

Cabot filed a notice of intent to seek supervisory writs. Johnson filed an opposition brief. Cabot filed a reply brief. And we granted Johnson's request to file a sur-reply brief. Thereafter, we granted Cabot's writ application and heard oral argument.

## DISCUSSION

In *Johnson v. Purpera*, 20-1175, pp. 6-7 (La. 5/13/21), --- So.3d ---, ---, our supreme court recently stated:

> This case comes before the court via a motion for summary judgment. As a result, our review is *de novo*, using the same criteria that govern the district court's consideration of whether summary judgment is appropriate. *Kennedy v. Sheriff of East Baton Rouge*, 05-1418, p. 25 (La. 7/10/06), 935 So.2d 669, 686. Pursuant to La. C.C.P. art. 966(A)(3), a court must grant a motion for summary judgment "if the motion, memorandum, and supporting documents show that there is no genuine issue as to material fact and that the mover is entitled to judgment as a matter of law." Notably, while the burden of proof remains with the movant, if, as here, the movant will not bear the burden of proof at trial of the matter, the movant's burden on the summary judgment motion does not require him to negate all essential elements of the adverse party's claim, but rather to point out to the court that there is an absence of factual support for one or more elements essential to the adverse party's claim; thereafter, the burden is on the adverse party to produce factual support sufficient to establish the existence of a genuine issue of material fact or that the mover is not entitled to judgment as a matter of law. La. C.C.P. art. 966(D)(1).
>
> The motion for summary judgment before the court arises out of plaintiff's claim for defamation. Emanating from La. C.C. art. 2315, defamation is a tort involving the invasion of a person's interest in his or her reputation and good name. *Kennedy*, 05-1418 at 4, 935 So.2d at

---

[2] Interestingly, although the trial court specifically described outstanding factual determinations as to whether the words of the letter were defamatory, it made no such finding regarding the element of publication. Nonetheless, it denied Cabot's motion for summary judgment.

4

674; *Costello v. Hardy*, 03-1146, p. 12 (La. 1/21/04), 864 So.2d 129, 139. Four elements are necessary to establish a claim for defamation: (1) a false and defamatory statement concerning another; (2) an unprivileged publication to a third party; (3) fault (negligence or greater) on the part of the publisher; and (4) resulting injury. *Id.*; RESTATEMENT (SECOND) OF TORTS § 558 (1977). As we explained in *Costello*, the fault requirement is generally referred to in the jurisprudence as malice, actual or implied. *Costello*, 03-1146 at 12, 864 So.2d at 139.

Given the foregoing, in order to prevail on a defamation claim, a plaintiff must prove " 'that the defendant, with actual malice or other fault, published a false statement with defamatory words which caused plaintiff damages.' " *Id.* (quoting *Trentecosta v. Beck*, 96-2388, p. 10 (La. 10/21/97), 703 So.2d 552, 559). If even one of the required elements of the tort is lacking, the claim fails. *Id.*

Because of their chilling effect on the exercise of free speech, defamation actions traditionally have been found particularly appropriate for resolution by summary judgment. "Summary adjudication, we have recognized, is a useful procedural tool and an effective screening device for avoiding the unnecessary harassment of defendants by unmeritorious actions which threaten the free exercise of rights of speech and press." *Kennedy*, 05-1418 at 25, 935 So.2d at 686.

Consistent with these principles, we will conduct a de novo review of Cabot's motion for summary judgment.

In the present case, Cabot, among other contentions, asserts that Johnson will not be able to establish two essential elements of his defamation claim: (1) defamatory words; and (2) an unprivileged publication to a third-party. After carefully reviewing the record, the trial court's reasons for judgment, and the arguments made, we find it only necessary to address the issue of publication as we find it dispositive of this matter.

An unprivileged communication is one that is not privileged. In *Kennedy,* 935 So.2d at 681-82, the supreme court explained:

In Louisiana, privilege is a defense to a defamation action. *Costello*, 03-1146 at 15, 864 So.2d at 141.... Privileged communications are divided into two general classes: (1) absolute; and (2) conditional or qualified. *Madison v. Bolton*, 234 La. 997, 102 So.2d

5

433, 439 n. 7 (1958). An absolute privilege exists in a limited number of situations, such as statements by judges and legislators in judicial and legislative proceedings. *Id.* A conditional or qualified privilege arises in a broader number of instances. *Id.* .... It is impossible to reduce the scope of a conditional or qualified privilege to any precise formula. *Id.* Nevertheless, the elements of the conditional privilege have been described as "good faith, an interest to be upheld and a statement limited in scope to this purpose, a proper occasion, and publication in the proper manner and to proper parties only." *Madison*, 102 So.2d at 439 n. 7. The privilege, it has been held, "arises from the social necessity of permitting full and unrestricted communication concerning a matter in which the parties have an interest or duty, without inhibiting free communication in such instances by the fear that the communicating party will be held liable in damages if the good faith communication later turns out to be inaccurate." *Toomer* [*v. Breaux*], 146 So.2d [723] at 725 [(La.App. 3 Cir. 1962)].

In *Costello,* 864 So.2d at 142 n.13, the supreme court explained that a privileged communication is an affirmative defense that "raises a new matter which, assuming the allegations in the petition to be true, constitutes a defense to the defamation action and will have the effect of defeating the defamation claim." *See also Sullivan v. Malta Park*, 14-0823, p. 11 (La.App. 4 Cir. 12/10/14), 156 So.3d 1200, 1207 (citing La.Code Civ.P. art. 1005 and *Costello*, p. 16, 864 So.2d at 142 n.13) wherein it was held that "[a] qualified privilege is an affirmative defense to a cause of action for defamation, which must be specially pled in a defendant's answer."); *Alexander v. Blue Williams, L.L.P.*, 18-0776, 2019 WL302078, (La.App. 4 Cir. 1/23/19), —— So.3d ——, ——, *writs denied*, 19-0432, 19-0435, 19-0432 (La. 9/6/19), 278 So.3d 370, 372, 968.

Johnson admits in his affidavit filed in opposition to Cabot's motion for summary judgment that he and Concier were yelling at each other, that they were not scared, and that he told Concier that they could settle the matter offsite. Nevertheless, Johnson contends the investigation that Junca undertook was faulty because it failed to consider the statements of Naquin and Smith, who, he contends,

6

painted Concier as the aggressor. As a result, he argues that the statements made in the disciplinary letter diminish his reputation and cast him in a harsh light with his fellow employees. Nonetheless, accepting that as true for purposes of argument, we observe that it was Johnson's additional burden to present evidence that he would be able to meet the burden of proving publication, an essential element of his cause of action, at a trial on the merits.

Cabot asserts that any communication regarding Johnson was in the scope of his employment and within the chain of command. Intra-corporate statements are not considered published to satisfy the publication requirement of defamation. *Brunet v. Fullmer*, 00-644 (La.App. 4 Cir. 1/10/01), 777 So.2d 1240. Moreover, as observed in *Doe v. Grant*, 01-0175, p. 8 (La.App. 4 Cir. 1/29/03), 839 So.2d 408, 416, *writ denied*, 03-0604 (La. 5/2/03), 842 So.2d 1102 (quoting *Bell v. Rogers,* 29,757, p. 10 (La.App. 2 Cir. 8/20/97), 698 So.2d 749, 756) "statements between employees, made within the course and scope of their employment, are not statements communicated or publicized to third persons so as to constitute a publication."

In the present case, the trial court acknowledged, and Johnson admits, that he has no evidence his documented verbal letter was shared with anyone other than those individuals present in the closed-door meeting where he was presented the letter. Instead, Johnson argues that Tim Hebert, a co-worker, was told about the verbal warning.

In its written reasons for judgment, the trial court stated, "To prove publication, plaintiff must show that the warning was shown to Tim Hebert[, a co-worker]. He admitted in his deposition that he does not know what Tim Hebert was told." Moreover, we have combed the record and observe that Hebert was either not

7

deposed or his deposition was not admitted into evidence in opposition to Cabot's motion for summary judgment. In addition, Johnson further stated in his deposition that no one else said anything to him about the write-up. Similarly, in Smith's deposition, one that Johnson relies upon, she stated that she had no idea that Hebert knew whether or not Johnson was going to get a write-up.

After thoroughly examining the record, our de novo review shows there can be no finding of defamation because the privileged communication does not constitute a publication of defamatory words and no other evidence of publication was submitted. It is evident that Johnson has failed to carry his burden of establishing publication, a necessary element in a defamation cause of action. Therefore, we find the trial court erred when it failed to grant Cabot's motion for summary judgment.

## DISPOSITION

For the foregoing reasons, we grant and make peremptory the writ application filed by Cabot. The judgment of the trial court is reversed. Summary judgment is granted in favor of Cabot Corporation and against Terry Johnson, dismissing Terry Johnson's petition for damages against Cabot Corporation with prejudice. Costs of the trial court and this appeal are assessed to Terry Johnson.

**WRIT GRANTED AND MADE PEREMPTORY.**